EDGAR COUNTY BANK AND TRUST COMPANY, Guardian of the Estate of DOUGLAS HUFFMAN, a Minor, Plaintiff-Appellant, *v.* PARIS HOSPITAL, INC., a/k/a Hospital and Medical Foundation of Paris, Inc., *et al.*, Defendants-Appellees.

(No. 11886;

Fourth District—March 21, 1973.

John E. Norton and Edward J. Kionka, both of Belleville, and Harold M. Jennings, of Markowitz, Lawrence, Lenz & Jennings, of Bloomington, for appellant.

Jack E. Horsley, Richard F. Record, Jr., and Stephen L. Corn, all of Craig & Craig, of Mattoon, and Robert L. Gibson, of Massey, Anderson & Gibson, of Paris, for appellees.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

On October 15, 1964, Douglas Huffman, then 17 months of age, was taken by his parents to the emergency room of the defendant hospital

where, by means of a hypodermic syringe, he was administered a shot by Doctor J. H. Acklin, assisted by Nurse Augusta Bostick, both of whom were employees of the hospital. Plaintiff alleges that the hypodermic needle was improperly inserted into the lower internal quadrant of Douglas' buttocks damaging the sciatic nerve, resulting in a foot drop, other permanent injuries and causing him to wear a leg brace.

The trial court dismissed all five counts of Plaintiff's Third Amended Complaint, and this appeal ensued. Count I was directed against the Hospital and based on the doctrine of *respondeat superior* involving negligent acts or omission of its employee, Doctor Acklin. Count II was also directed against the Hospital under the *respondeat superior* theory predicated upon acts and omissions allegedly attributable to its employee, Nurse Bostick. Count III, directed against the Hospital, was based on the negligence of the Hospital for its alleged failure to properly operate its emergency room and failure to provide employees who were qualified to give injections. Also commingled with this theory was a *respondeat superior* charge involving the acts of Doctor Acklin and Nurse Bostick. Count IV was against the Hospital and was grounded on the doctrine of *res ipsa loquitur,* alleging that the emergency room was in the exclusive control of the Hospital whose duty it was to use reasonable care so "the occurrence speaks for itself". Count V was directed against Nurse Bostick and charged that she failed to properly hold, position and restrain the minor plaintiff; failed to warn the doctor that the shot was being improperly administered and failed to warn the plaintiff's parents of the hazards entailed.

The chronology of events preceding the order appealed from are as follows:

On December 20, 1966, pursuant to the wishes of his parents, the Edgar County Bank was appointed as Guardian for the minor plaintiff. During the hearing, William A. Huffman, plaintiff's father, stated to the Court that Douglas' parents had discussed, and decided to accept, a recommendation of the Bank that the claim against Doctor Acklin (against whom counts in complaints preceding the Third Amended Complaint had been directed) be settled for $25,000, but that another suit against the Hospital was pending. On the same day, the guardian Bank filed a petition seeking the court's authorization to settle the suit against Doctor Acklin with the approval of Douglas' guardian *ad litem.* This action was taken pursuant to ch. 3, par. 215, Ill. Rev. Stat. 1966, which provides that by leave of court a guardian may compromise a claim of the ward in any personal estate such terms as the court directs. This petition stated that a settlement with Doctor Acklin would compromise

plaintiff's cause of action against him for the sum of $25,000; the compromise to be effected by means of a covenant not to sue the doctor, but "* * * which will leave as a remaining defendant, the Paris Hospital, Inc., a/k/a the Hospital and Medical Foundation of Paris, Inc., as a party defendant in the last suit filed in this County * * *". On the same day, December 20, 1966, the Court entered an order authorizing the settlement with Doctor Acklin in return for $25,000. The settlement was to be accomplished by means of a covenant not to sue the doctor. The Court further ordered the guardian Bank to execute a stipulation for the dismissal of Doctor Acklin with prejudice "but with a specific understanding that such dismissal order will not in any way release or prejudice the rights of said minor child in his suit against the Paris Hospital, Inc. * * *." Such a stipulation dismissing Doctor Acklin was executed by the guardian Bank on December 20, 1966, and presented to Doctor Acklin. Also, on the same day, a covenant not to sue was executed. The instrument set forth the circumstances of the claim and stated that Doctor Acklin and his partnership were offering $25,000 to purchase peace and to compromise the claim "* * * recognizing that the said amount so recoverable will be far less than the full damages sustained by the parties so involved, and particularly by the said Douglas Arthur Huffman, a minor. The offer has been made and accepted on the basis that the claim remaining against the Paris Hospital, Inc., a/k/a Hospital and Medical Foundation of Paris, Inc., can be pursued on the part of said minor and that the compromising of the claim against the remaining defendants is on the basis of a covenant not to sue." The covenant also provided that the plaintiff was accepting the $25,000 and, in return agreeing to dismiss the suit with prejudice against the doctor, but only on the express understanding that the acceptance of such payment should not be construed as a release of any other person or persons and that the guardian was expressly reserving any and all causes of action which its ward might have against the Paris Hospital. The covenant further provided that "It is expressly understood and agreed by and between the parties hereto that this agreement is solely a purchase of peace and a covenant not to sue, and shall not be interpreted as, or, construed as a legal release of any other person by any court which hereafter may be called upon for the construction of this instrument." The stipulation above referred to further provided that the plaintiff "* * * do hereby stipulate that the above entitled cause may be dismissed with prejudice as to the Medical Center Clinic of Paris, a partnership and Doctor John Doe, a/k/a Doctor J. H. Acklin." The stipulation for dismissal, though made and dated on December 20, 1966, (the

same date of the filing and hearing on the petition to compromise the claim, the same date the court authorized the compromise and the same date on which the covenant was executed) was not presented to the court until October 25, 1967. It was, on that date, presented to the same judge who had authorized the settlement and who had presided at the proceedings had on December 20, 1966. There is an affidavit of plaintiff's counsel in the record that the delay in presenting the stipulation to the court was solely attributable to counsel for Doctor Acklin. The order entered by the court on October 25, 1967, merely stated "It is hereby ordered that this cause may be stricken with prejudice as to the defendants, Medical Center Clinic of Paris, a partnership, and Doctor John Doe, a/k/a Doctor J. H. Acklin."

The trial court dismissed Count IV of the Third Amended Complaint, holding that *res ipsa loquitur* was not applicable to the facts plead and dismissed Counts I, II, III and V on the ground that the execution of the covenant to Doctor Acklin operated to release plaintiff's action against the defendant Hospital under the rule set forth in *Holcomb v. Flavin*, 34 Ill.2d 558, 216 N.E.2d 811. The language employed by the trial judge in dismissing the five counts of the Third Amended Complaint would indicate that he employed the same reasons as pertained to his earlier dismissal of the First Amended Complaint which contained only two counts. The first count was directed against the Hospital, based on *respondeat superior* relating to the conduct of Doctor Acklin, and the second count was also directed against the Hospital under the doctrine of *res ipsa loquitur*, but referred only to conduct of Doctor Acklin. In his earlier dismissal of the First Amended Complaint the trial judge held that said Count I was dismissed because, under *Holcomb v. Flavin, supra*, the covenant to Doctor Acklin operated to release the Hospital and that Count II was dismissed because the allegations were found not to support any presumption of negligence. Count I of the Third Amended Complaint was the same as Count I of the First Amended Complaint and Count IV of the Third Amended Complaint, based on *res ipsa loquitur*, was the same as Count II of the earlier complaint. The trial judge indicated that he was dismissing the Third Amended Complaint for the same reasons that he had dismissed the First Amended Complaint and we are thus confronted with the two count rationale as applied to a five count complaint. In dismissing all counts of the Third Amended Complaint the judge did not specifically mention new Counts II, III and V but apparently dismissed them under the persuasion of *Holcomb v. Flavin*, 34 Ill.2d 558, 216 N.E.2d 811.

The principle issue presented by this appeal is whether or not the ex-

ecution of the covenant not to sue the servant, Doctor Acklin, operates to release the master, Paris Hospital Inc., under the circumstances obtaining in this case.

■■■ A joint action against a master and his servant may be brought for injuries resulting from the negligent act of the servant for which the master is liable under the doctrine of *respondeat superior, Lasko v. Meier,* 394 Ill. 71, 67 N.E.2d 162. Where the liability of the master is solely vicarious it is clear that a *release* of the employee by the injured party will release the employer. *Wagner v. C & A R.R. Co.,* 265 Ill. 245, 106 N.E. 809.

■■■ Under Illinois law a covenant not to sue does not have the same legal effect as a release, and has no effect on the liability of other wrongdoers not parties to the covenant. A covenant not to sue one of several joint tortfeasors does not automatically release the others. (*Chicago and A. R.R. Co. v. Averill,* 224 Ill. 516, 79 N.E. 654; *Aiken v. Insull,* 122 F.2d 746.) Whether an instrument is construed to be a covenant not to sue depends upon the language used, the substance of the agreement, and the intention of the parties. (*A. P. Freund Sons v. Vaupell,* 30 Ill.App.2d 271, 174 N.E.2d 882.) The underlying principle being that a person is only entitled to *one full compensation* for his injuries, *Hulke v. International Harvester Mfg. Co.,* 14 Ill.App.2d 5, 142 N.E.2d 717.

■■ The appellees, in urging that this covenant not to sue operated to release them from liability, relies, as did the trial court, upon *Holcomb v. Flavin,* 34 Ill.2d 558, 216 N.E.2d 811, and specifically upon the following language which appears on page 565 of the opinion: "* * * the covenant not to sue the servant or agent releases the master or principal and we so hold." However, the court in *Holcomb* also commented "As pointed out in its opinion, four of the cases cited by the Appellate Court in support of its conclusion involved covenants containing specific reservations of the right to proceed against the master * * *. The covenant herein is a standard covenant not to sue containing no reservations of rights against others * * *. No mention is made in the covenant of the defendants in this suit." We construe the holding in *Holcomb* to be more narrow in its application than contended by the appellees. More specifically we view the holding in *Holcomb* to be that a covenant not to sue the servant releases the master *provided* there is no reservation of right to proceed against the master. Our view is supported by the language in *American National Bank and Trust Co. v. Pennsylvania R.R.,* 40 Ill.2d 186, 238 N.E.2d 385, where the Court said at page 192, "There was no reservation of any right to proceed against the master in the *Holcomb* case, a matter which was carefully pointed out in the opinion

of this court." In the *American National Bank* case a lessor and lessee were sued, judgment obtained and a covenant not to enforce the judgment given to the lessee. The liability of the lessor was vicarious. The order of court authorizing settlement with the lessee recited that the guardian "\* \* \* may not and shall not execute any document which sets forth, constitutes, or may be construed as a release of any of said railroad companies against whom judgment has been entered, or which might affect in any way said minor's right to proceed against \* \* \*." The court held that the covenant, under these circumstances, did not operate as a release.

The defendants also rely upon *Gramm v. Armour and Co.*, 132 Ill.App. 2d 1011, 271 N.E.2d 52. There plaintiff had given a covenant not to sue the servant which contained an express reservation of right to proceed against the master. The Appellate Court, relying on the *Holcomb* case, held that the covenant extinguished the right to proceed against the master, and in referring to the reservation of right the court said, "The *Holcomb* case does not attach any particular significance to such distinctions \* \* \*." We note that the opinion in *Gramm* contains no reference to the holding in *American National Bank and Trust Co. v. Pennsylvania R.R.*, 40 Ill.2d 186, 238 N.E.2d 385, and it seems clear from the language above quoted from the *American National Bank* opinion that distinctions such as the reservation of right and the recital that the covenant is given as a compromise and not in full settlement are not only of "particular significance" but in fact controlling. For these reasons we respectfully submit that *Gramm* is not controlling.

■■ In the instant case we see no reason why the expressed intent of the parties, clearly manifested during the proceedings had in open court on December 20, 1966, and embodied in the Court's order of that date, as well as in the covenant itself, should not be given the effect envisaged by them. We see no rule of law or public policy which inhibits such a result.

■■ The words "with prejudice" appear in the covenant, the stipulation, and the order of dismissal in the instant case. The trial court said it would proceed as though these words were not present because it believed other reasons determined the result. However, it cited *Bank of America v. Jorjorian*, 303 Ill.App. 184, 24 N.E.2d 896 and it is fairly inferrable that the trial judge was of the opinion that the dismissal of the suit against Doctor Acklin "with prejudice" would bar subsequent action against Paris Hospital, Inc. *Jorjorian* held that the words "with prejudice" are as conclusive of the rights of the party as if the suit had been prosecuted to final adjudication adverse to the plaintiff. Generally, a plaintiff

may dismiss the action as to one or more of the defendants and continue as to other defendants even where the defendants are sued jointly. (*Goldberg, v. Capitol Freight Lines,* 382 Ill. 283, 47 N.E.2d 67.) The primary purpose of permitting the dismissal of a defendant is to protect the defendant whose dismissal is sought, no other defendants who happen to be in the case. *Gilliam v. Agar Packing Co.,* 67 Ill.App.2d 235, 216 N.E.2d 504.

The words "with prejudice" which appear in the covenant, the stipulation, and the order of dismissal in the instant case were clearly utilized to preclude the plaintiff from further proceeding against Doctor Acklin and were simply for the protection of that covenantee who had purchased his peace. That inclusion and use of the words in this context did not destroy the underlying cause of action. *Gilliam v. Agar, supra.*

■■ The order dismissing Counts I and III of the Third Amended Complaint is reversed since we hold that the covenant not to sue did not operate to release the defendant Hospital. The order dismissing Counts II and V is reversed since they are grounded on the alleged negligence of Nurse Bostick and in no event affected by the covenant given to Doctor Acklin. The trial court was correct in holding that the doctrine of *res ipsa loquitur is* not applicable to the facts plead in Count IV and the order dismissing Count IV is affirmed. We remand for further proceedings not inconsistent with the views herein expressed.

Affirmed in part, reversed in part and remanded.

CRAVEN, P. J., and SMITH, J., concur.