MARK KRAVIS, a Minor, by ALLEN KRAVIS, His Father and Next Friend, Plaintiff-Appellee, *v.* SMITH-MARINE, INC., *et al.*, Defendants—(STATE FARM FIRE & CASUALTY COMPANY, Garnishee-Appellant.)

(No. 59059; ▮▮▮▮▮▮▮▮)

First District (2nd Division)—June 11, 1974.

*Rehearing denied July 26, 1974.*

John T. Kennedy, of Chicago, for appellant.

Joseph & Friedman and Lipnick, Barsy & Joseph, both of Chicago, for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

This appeal arises from a garnishment proceeding in which the court entered a judgment in the sum of $50,000 in favor of the minor plaintiff, Mark Kravis. Garnishee, State Farm Fire & Casualty Co., appeals from the judgment and contends that (1) the business pursuits exclusion of its insurance policy applies; and (2) covenants not to sue given by plaintiff to certain defendants precludes recovery in the garnishment proceeding.

This cause of action arose from a boating accident which occurred on August 30, 1966, in Lake County, Illinois. A boat owned by William Farrar and operated by Andrew Korpan collided with another boat in which plaintiff, Mark Kravis, was a passenger. As a result of this collision plaintiff was seriously injured.

William Farrer purchased the boat involved in the accident from Smith-Marine, Inc., of Cicero, Illinois, less than 1 year prior to the accident. Thereafter Farrar repeatedly notified Smith-Marine that repairs to the boat were necessary. A few days before the accident, Gerald Meyer, an employee of Smith-Marine, was instructed by his employer to transport the boat from its mooring place at Farrar's summer home to the Smith-Marine shop in Cicero for repairs. Farrar had given Smith-Marine permission to pick up the boat and perform the needed repairs.

Smith-Marine leased one or two slips at Korpan's Landing, a privately-owned pier near the Farrar summer home. Meyer also kept his own private boat at Korpan's Landing. On August 30, 1966, Meyer drove his car and trailer from Smith-Marine Korpan's Landing, parked his car and trailer there, and drove his own boat to the Farrar summer home. He was accompanied by Andrew Korpan, the 14-year-old son of Walter and Anna Korpan, proprietors of Korpan's Landing. Andrew Korpan gratuitously agreed to drive Farrar's boat back to Korpan's Landing where it was to be placed on Meyer's trailer for the trip to Smith-Marine. The accident occurred while Andrew Korpan was operating the Farrar boat.

The Farrar boat was insured by a $50,000 boatowner's policy issued by garnishee State Farm Fire & Casualty Co. (hereinafter State Farm). The pertinent policy provisions are:

"Policy Agreements

To pay all sums which the insured shall become legally obliged to pay as damages because of bodily injury sustained by other persons and property damage, arising out of the ownership, maintenance or use of the owned watercraft.

\* \* \*

The unqualified word 'insured' includes (1) the named insured, (2) \* \* \* residents of his household \* \* \*, (3) any other person while using the owned watercraft, provided the actual use of such watercraft is with permission of the named insured \* \* \* and is within the scope of such insurance.

\* \* \*

'Business' includes trade, profession or occupation.

Exclusions

This policy does not apply:

(r) to an occurrence while the boat to which the insured motor is attached, or the boat insured hereunder, is used as a public livery conveyance for carrying passengers for compensation or rented to others, or used for any other business pursuit, or while operated in any official race or speed test."

On December 8, 1970, plaintiff filed an amended complaint against Smith-Marine, Andrew Korpan, Anna Korpan and Walter Korpan, individually, and Anna Korpan and Walter Korpan, doing business as Korpan's Landing, alleging the negligent operation of the Farrar boat by Andrew Korpan, agent for Smith-Marine and Korpan's Landing. That same day a hearing was held, at which time the court approved settlements between plaintiff and Smith-Marine and between plaintiff and Anna and Walter Korpan, individually and doing business as Korpan's Landing. In return for these settlement agreements, plaintiff executed covenants not to sue Smith-Marine and Anna and Walter Korpan, individually and doing business as Korpan's Landing. The covenant not to sue Smith-Marine included a handwritten provision (initialed by counsel) that the covenant is "specifically not an accord and satisfaction nor release as to any rights remaining on behalf of Mark Kravis against State Farm Mutual Insurance Co." The covenant not to sue Anna Korpan, individually and doing business as Korpan's Landing stated, *inter alia*, "this agreement is not intended to be and is not a release nor an accord and satisfaction."

Counsel for plaintiff stated at the hearing, and this statement was confirmed by the trial judge, that State Farm had been notified of all negotiations between the parties. The trial judge stated that he had spoken to counsel for State Farm who declined to participate or appear.

Plaintiff's counsel stated that Andrew Korpan's use of the boat was within the coverage of the State Farm policy, and that plaintiff intended to pursue a recovery against State Farm in a subsequent action under the terms of the policy.

The trial court dismissed the cause of action with prejudice as against Smith-Marine, found for plaintiff against Andrew Korpan and assessed damages at $315,000. The judgment order stated: "Execution stayed until further order except for any action plaintiff or defendant Andrew Korpan might have against State Farm Insurance Co." *

On March 17, 1971, plaintiff filed an affidavit of garnishment against State Farm based upon the judgment entered on December 8, 1970, against Andrew Korpan. The affidavit stated that State Farm was indebted to the debtor, Andrew Korpan, and had in its possession, custody or control property belonging to him. The garnishment summons was served on State Farm on March 23, 1971.

On December 16, 1971, garnishee State Farm filed its amended answer to the garnishment interrogatories and raised as affirmative defenses: (1) that its policy exclusion as to business pursuits was applicable to Andrew Korpan's operation of the Farrar boat; and (2) that the covenants not to sue Smith-Marine and its agents and servants, and Anna and Walter Korpan, individually and doing business as Korpan's Landing, and their agents and servants also ran to Andrew Korpan, thereby precluding garnishment against State Farm.

On February 21, 1973, the trial court found that the defenses raised by State Farm were inapplicable to the facts of the case, and that plaintiff was entitled to garnishment against State Farm pursuant to the judgment of December 8, 1970. Judgment was then entered in favor of plaintiff and against defendant garnishee in the amount of $50,000.

■■ When ruling on a motion for judgment on the pleadings, a trial court must ascertain whether an issue of fact is presented by the pleadings. If no issue of fact exists, the trial court must determine which party is entitled to a judgment as a matter of law. (*Hartford Accident & Indemnity Co. v. Case Foundation Co.*, 10 Ill.App.3d 115, 294 N.E.2d 7.) In the instant case the sole issues presented concern construction of State Farm's insurance policy and of the covenants not to sue. Construction of contracts presents solely questions of law, and the trial court properly proceeded to construe the contracts at issue. *Cf. Coons v. Home Life Insurance Co.*, 368 Ill. 231, 13 N.E.2d 482.

Defendant does not dispute the fact that Andrew Korpan's use of

---

* An April 22, 1971, the court granted plaintiff's motion to amend its decree of December 8, 1970, to order 1) a nonsuit as to all defendants other than Andrew Korpan; and 2) a correction of the name of State Farm Fire & Casualty Co.

the boat was with the permission of the insured and that therefore Andrew Korpan was an additional insured under the terms of the policy. Defendant contends, however, that at the time of the boating accident the boat was being used by Smith-Marine in its business pursuits, and that therefore, the policy's "business pursuits" exclusion is applicable. Defendant argues that permission to use the boat was given to Smith-Marine by Farrar to enable Smith-Marine to perform the necessary repair work. To achieve this end, it was necessary for Smith-Marine to transport the boat to its premises in Cicero. The activities involved in picking up the boat and transporting it were within the business pursuits of Smith-Marine.

■■ The pertinent policy provision excludes coverage when the insured boat is "used as a public livery conveyance for carrying passengers for compensation, or rented to others, or used for any other business pursuit, or while operating in any official race of speed test." The basic question before this court is one of construction of this exclusionary provision. It is an established principle of insurance contract law that the insurer assumes the burden of affirmatively demonstrating that the policy exclusion is applicable. (*Caster v. Motors Insurance Co.*, 28 Ill.App.2d 363, 171 N.E.2d 425.) It is equally well established that when an exclusionary provision is ambiguous or unclear, that construction of the provision will be adopted which resolves the uncertainty in the insured's favor. *State Farm Fire & Casualty Co. v. McDonald*, 87 Ill.App.2d 15, 230 N.E.2d 513.

In effect, defendant urges that we interpret the clause "used for any other business pursuit" to mean that a boat is excluded from coverage if it is in the possession of someone engaged in business of selling or servicing boats. Plaintiff urges us to interpret the clause to mean that a boat is excluded only if being driven as a means of furnishing service to customers, *i.e.*, as a conveyance for hire. Therefore, because the exclusion is susceptible to more than one interpretation, we conclude that it is ambiguous, and our duty is to construe it in a reasonable manner.

■■ Plaintiff maintains that the construction rule of *ejusdem generis* is applicable. The principle of *ejusdem generis* simply stated is that when general words follow particular and specific words in a statute or contract, the general words must be construed to include only things of the same general kind as those indicated by the particular and specific words. (*Bullman v. City of Chicago*, 367 Ill. 217, 10 N.E.2d 961.) However, the restriction of general words to things *ejusdem generis* must not be carried to such excess as to deprive them of all meaning. If the particular words exhaust a whole genus, the general words must refer to some larger class. *Gage v. Cameron*, 212 Ill. 146, 72 N.E. 204.

The application of this rule of construction may be employed to ascertain the intention of the contracting parties as expressed in the contract to be construed. (*Gage v. Cameron, supra.*) We are of the opinion, however, that we need not rely exclusively upon the rule of *ejusdem generis* to construe the exclusionary provision in a reasonable manner.

Plaintiff directs our attention to *Security National Insurance Co. v. Sequoyah Marina, Inc.*, 246 F.2d 830 (10th Cir. 1957) which is somewhat similar to the instant case. In that case the insured gave his permission to a repairman to repair his boat. The repairman started the engine and the boat exploded causing property damage. The insurance policy contained an exclusionary provision which excluded coverage when the boat was used for any business pursuit other than activities ordinarily incident to non-business pursuits. The court found that the activities of the repairman were ordinarily incident to the non-business use of the boat by the owner and were not within the exclusion.

■■ Although the exclusionary provision in *Security National Insurance Co.* included an "ordinarily incident to non-business pursuits" clause which does not appear in the instant policy, the reasoning of the court applies to the situation at bar. The court found that the boat was the object of a business pursuit, rather than being used in furtherance of business pursuits. We agree with that conclusion, and we likewise are of the opinion that the use of the boat in the instant case, in being driven to the shop for repairs, was not a business pursuit of Smith-Marine, and therefore, is not within the policy exclusion. It would be a distortion of the insurance policy to conclude that the exclusion applies to the facts before us. If the insured Farrar had driven his boat to be transported for repairs, and had collided with another boat, there would be no question that the policy exclusion would have been inapplicable. We see no material difference in the instant case.

■■ We also note that the court in *Security National Insurance Co.* found significant the fact that automobile insurers have deemed it advisable to expressly exclude repairmen from coverage. Our research has uncovered many cases in which automobile accidents occurred while repairmen were driving insureds' cars to or from repair shops. The automobile policies excluded coverage to automobiles "used in the automobile business." The issue in these cases, which is analogous to the issue before us, was whether the repairmen's driving of the automobiles constituted a use in the automobile business. These decisions held that the automobiles being driven for repairs were objects of business pursuits, and were not being used therein. (See *Allstate Insurance Co. v. Skawinski*, 40 Ill.App.2d 136, 189 N.E.2d 365; *Goforth v. Allstate Insurance Co.*, 220 F. Supp. 616 (W.D.N.C. 1963), *affirmed per curiam*, 327

F.2d 637 (4th Cir. 1964); *McGree v. Jenning,* 55 Wash. 2d 725, 349 P.2d 1071.) Accordingly, we hold that the Farrar boat was not being used by Smith-Marine in its business pursuits, and the policy exclusion is inapplicable to the facts. Plaintiff is therefore entitled to indemnification pursuant to the policy agreement binding State Farm "to pay all sums which the insured shall become obligated to pay because of bodily injury * * * arising out of * * * use of the owned watercraft."

Defendant's second contention is that it is not obligated to pay the amount of the policy because the covenants not to sue given by plaintiff to Smith-Marine, its agents and servants, and to Anna and Walter Korpan, individually and doing business as Korpan's Landing, their agents and servants, precluded recovery against State Farm as garnishee. Specifically, defendant maintains that plaintiff's amended complaint alleged that Andrew Korpan was acting as agent of Smith-Marine in his operation of the Farrar boat, and that plaintiff did not deny this agency relationship in any additional pleading. Therefore, defendant concludes, because the covenants not to sue encompassed agents of Smith-Marine and the Korpans, these covenants also ran to Andrew Korpan. The covenants therefore barred any action against Andrew Korpan, and no basis exists for garnishment.

Assuming, arguendo, that Andrew Korpan was acting in an agency relationship (we note that this issue was not litigated or determined in the proceedings below), we do not agree with defendant that the covenants not to sue operated to release Andrew Korpan or to preclude recovery against defendant in the instant suit.

Generally, a covenant not to sue one of several joint tortfeasors does not release others. (*Chicago & Alton Ry. Co. v. Averill,* 224 Ill. 516, 79 N.E. 654.) Under Illinois law a covenant not to sue does not have the same legal effect as a release, and has no effect on the liability of other wrongdoers not parties to the covenant.

In the instant case, the covenant not to sue Smith-Marine also contained a handwritten provision (initialed by counsel for plaintiff, Smith-Marine, and Anna and Walter Korpan) that the covenant specifically did not release plaintiff's rights against State Farm. In open court on December 8, 1970, plaintiff's counsel stated that negotiations between the parties had resulted in a settlement whereby Smith-Marine had agreed to accept covenants not to sue from plaintiff, and that a judgment should be entered only against Andrew Korpan. Statements of plaintiff's counsel and the language of the trial court in its order manifested the intent of the parties that an action would be brought against State Farm on its policy of insurance.

■■■ The intent of the parties, as manifested in the court proceedings,

as well as in the covenant running to Smith-Marine, should be given the full effect envisaged by the parties. (See *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.*, 10 Ill.App.3d 465, 294 N.E.2d 319.) Defendant attempts to refute this clear manifestation of intent by emphasizing that defendant was erroneously referred to as State Farm Mutual Insurance Co. Defendant's attempt to convince this court that it was not the party referred to in the proceedings is futile. To accept this reasoning would completely repudiate the intent of the parties as reflected throughout the record before us. Defendant was notified of all negotiations and proceedings, and cannot now rely on a mere misnomer. For these reasons we hold that the covenants not to sue did not release Andrew Korpan, and that, therefore, the instant garnishment suit was proper.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

HAYES, P. J., and LEIGHTON, J., concur.