HITCHCOCK AIR CONDITIONING, HEATING & PIPING COMPANY, Plaintiff-Appellee, v. HENRY HAZEN, d/b/a H & M Enterprises and d/b/a Escort Service, Defendant-Appellant.

Third District   No. 75-277

Opinion filed October 19, 1976.—Rehearing denied December 13, 1976.

Sours, Newell & Nicol, of Peoria (William Nicol, of counsel), for appellant.

Kelly & Baner, of Peoria (Richard Baner, of counsel), for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

This action was brought in the name of Hitchcock Air Conditioning & Piping Company (plaintiff-appellee), the consignee of a steam generator which was damaged on August 9, 1972, by striking a highway overpass while being transported by Machinery Transports. Defendant Henry Hazen, d/b/a H & M Enterprises and d/b/a Escort Service (defendant-appellant and hereinafter referred to as Escort Service), was employed as escort for the move of the generator by the carrier, Machinery Transports.

Plaintiff entered into a loan receipt agreement whereby the carrier Machinery Transports and its cargo insurer, Kansas City Fire & Marine Insurance Co., took plaintiff's assignment of its claim for damage to the steam generator (except its claim for $363.24 consequential damages) in consideration of the payment of $50,100. Machinery Transports issued a check payable to the order of plaintiff in the amount of $5,000. The cargo insurer issued a check drawn to the order of plaintiff and endorsed by Machinery Transports in the amount of $45,100. The checks were endorsed and deposited to the account of plaintiff on December 18, 1972.

The crux of the legal dispute involved in this appeal concerns the discharge and loan receipt endorsement on the $45,100 check issued by the cargo insurer.

Defendant Escort Service asserted the carrier's primary liability as an equitable defense and plaintiff's alleged discharge of a joint tort feasor, Machinery Transports, as an affirmative defense. Hitchcock made motions for summary judgments as to each defense. Its motions were granted by Judge Albert Pucci on March 21, 1975, and on June 20, 1975. The case was set for trial on July 25, 1975. On July 22, 1975, Judge Edward E. Haugens, who was assigned to the final pretrial conference on the case, certified two legal questions pursuant to Supreme Court Rule 308. This appeal is pursuant to Supreme Court Rule 308 which allows interlocutory appeals where the trial court finds the order involves a question of law as to which there is substantial ground for a difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of the litigation (Ill. Rev. Stat. 1975, ch. 110A, par. 308).

The two questions certified by the trial court are: "Where a steam generator [boiler] was damaged by striking a highway overpass while being transported by a truck carrier in interstate commerce as an oversized load pursuant to a permit issued by the Illinois Department of Transportation, and the consignee of the steam generator has presented a loss and damage claim to the carrier in the amount of FIFTY

THOUSAND FOUR HUNDRED SIXTY-THREE DOLLARS AND TWENTY-FOUR CENTS ($50,463.24):

(1) May the carrier and its cargo insurer in consideration of the payment of FIFTY THOUSAND ONE HUNDRED DOLLARS ($50,100.00) take the consignee's assignment of its claims for damage to the steam generator (except the consignee's claim for THREE HUNDRED SIXTY-THREE DOLLARS AND TWENTY-FOUR CENTS ($363.24) consequential damage) and bring suit in the consignee's name against a third party so as to avoid the issue of the carrier's own negligence, giving consideration to the public policy expressed in the Illinois rule against contribution between tort-feasors, the regulations of the Illinois Department of Transportation, and the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C.A., Sec. 20, Paragraphs (11) and (12)?

(2) If this action may be maintained in the consignee's name by the carrier and its cargo insurer, is it a defense to the action, where FORTY-FIVE THOUSAND ONE HUNDRED DOLLARS ($45,100.00) of said payment of FIFTY THOUSAND ONE HUNDRED DOLLARS ($50,100.00) was by check of the insurer, that by endorsement of the cargo insurer's check the consignee was required to execute the following:

All payees to whom this check is made payable must execute the following discharge

### DISCHARGE

All claims and demands whatsoever against the Company named in the check connected with the within mentioned loss as herein stated are released and discharged.

### Loan Receipt

By endorsement the payee acknowledges the receipt of the amount of this draft as a loan repayable only out of any net recovery made from another insurer or from any vessel, carrier, bailee, tort feasor, or others; and as security for said repayment the payee pledges and assigns to the named insurance company all said claims * * *."

Defendant-appellant Escort Service contends a cause of action for property damage may not in inequity be assigned for the purpose of enabling the assignee to recover thereupon in the assignor's name without consideration of the assignee's own alleged negligence causing the damage. Appellant concedes the general rules that a cause of action for property damage may be assigned and that an action may be brought by the assignee in the name of the assignor where the assignor retains

some interest therein. Appellant argues equity would require an examination of the ultimate consequences of the transaction in the light of established legal principles where the assignor Hitchcock executed the assignment in consideration of the carrier-assignee's payment of substantially all of Hitchcock's pending claim against the carrier and the carrier then asserted a claim in the assignor's name against appellant Escort Service. We note plaintiff-appellee characterizes the agreement as a loan receipt agreement whereas defendant-appellant, Escort Service, characterizes it as a release and as an assignment.

Taking the first issue as certified by the trial court we first note that the Carmack Amendment to the Interstate Commerce Act (49 U.S.C. §20 (11), (12)) provides in effect that the carrier is primarily liable. Plaintiff argues the loan receipt agreement, which it so characterizes the agreement instead of calling it a release or assignment, in no way alters or changes the actual legal liabilities involved and that the execution of the agreement is an acknowledgement of the carrier's liability. Similarly, the Illinois Department of Transportation Provision Form BT 990 provides "The grantee assumes all responsibility for injury to persons, or damage to public or private property, including his own, or the object being transported, caused directly or indirectly by the transportation of vehicle or vehicles and objects authorized under this permit." Defendant argues the obligations imposed by the issuance of the permit should invalidate an assignment such as that made by plaintiff as an attempt by the carrier to circumvent its primary obligation for the safety of the shipment.

We acknowledge the existence of the public policy expressed in the Illinois rule against contribution between tortfeasors as enunciated in such cases as *Reese v. Chicago, Burlington & Quincy R.R. Co.*, 55 Ill. 2d 356, 303 N.E.2d 382, wherein the court noted an exception to the general rule exists in those cases where a tortfeasor whose negligence was "passive" may be entitled to indemnification from a tortfeasor whose negligence was "active." The first issue, however, as certified by the trial court, does not yet directly involve us in deciding how to characterize the agreement between plaintiff and Machinery Transports. It states the question in light of the above principles and whether Machinery Transports and its cargo insurer could take plaintiff's assignment of its claim for damage to the steam generator (except the claim for consequential damages) and bring suit in plaintiff-consignee's name.

In effect, with regard to the first certified issue, we must decide whether plaintiff has retained a sufficient interest in its cause of action so as to permit Machinery Transports to sue in plaintiff's name. Defendant-appellant concedes both that a cause of action for property damage may be assigned and that the assignee may bring an action in the name of the assignor where the assignor retains some interest therein. The interest

retained by plaintiff in the instant case is its claim for $363.24 consequential damages. Defendant cites no cases involving a so-called nominally retained interest by assignor as invalidating the bringing of an action by the assignee in the assignor's name. *Shaw v. Close,* 92 Ill. App. 2d 1, 235 N.E.2d 830, supports the proposition that where the right of subrogation exists an action may be brought in the name of the insured if the insured has an interest in the suit and is entitled to recover something, if only a nominal sum, over and above the amount of the subrogation claim. See also *Smith v. General Paving Co.,* 24 Ill. App. 3d 858, 321 N.E.2d 689.

■■ First of all, without regard to the principles cited above relating to public policy, the Carmack Amendment and the regulations of the Illinois Department of Transportation, we hold in accordance with *Shaw v. Close,* 92 Ill. App. 2d 1, 235 N.E.2d 830, and *Smith v. General Paving Co.,* 24 Ill. App. 3d 858, 321 N.E.2d 689, plaintiff has retained a sufficient interest in its cause of action so as to permit Machinery Transports to sue in plaintiff's name. Furthermore, even giving consideration to the above-cited principles, we hold the carrier and its cargo insurer in consideration of the payment of $50,100 could take the consignee's assignment of its claim for damage and bring suit in the consignee's name against the defendant Escort Service. Machinery Transports has, in effect, assumed responsibility for the damage. The exact nature of its assumption of responsibility, *i.e.,* its agreement with plaintiff Hitchcock Air Conditioning, Heating and Piping Company, is a subject more necessary for resolution with regard to the second issue certified by the trial court.

Since we have decided this action can be maintained in the consignee's name by the carrier and its cargo insurer, we now must deal with the crux of the legal dispute which is whether it is a defense to the action by defendant Escort Service where $45,100 of the payment of $50,100 to plaintiff was by check of the insurer and by endorsement of the cargo insurer's check the consignee, Hitchcock, was required to execute the document set forth in part earlier in this opinion entitled Discharge and Loan Receipt.

The crux of defendant-appellant Escort Service's argument is twofold: (1) after the payment of plaintiff's claim against Machinery Transports by delivery of the sum of $50,100 there remained no justifiable matter which could be assigned for the purpose of providing a basis for this suit; and (2) the so-called loan receipt agreement was actually a release of Machinery Transports by plaintiff Hitchcock and therefore constitutes a bar to this suit.

Illinois recognizes a distinction between a release and a covenant not to sue in that a release generally extinguishes the cause of action while a covenant not to sue does not affect the cause of action but only the right to

sue thereon. A release is generally considered a bar to further action but not a covenant not to sue. (*Hulke v. International Manufacturing Co.*, 14 Ill. App. 2d 5, 142 N.E.2d 717.) The court in *Hulke* stated, "Whether or not a document is construed as a release, an accord and satisfaction, or a covenant not to sue depends upon the words used, the amount paid, the substance of the agreement and the intention of the parties." *Hulke v. International Manufacturing Co.*, 14 Ill. App. 2d 5, 24-25, 142 N.E.2d 717, 727.

In *Reese v. Chicago, Burlington & Quincy R.R. Co.*, 55 Ill. 2d 356, 303 N.E.2d 382, plaintiff brought a wrongful death action against plaintiff railroad under the Federal Employer's Liability Act (45 U.S.C. §51-60 (1939)) and against the manufacturer of a crane on a theory of strict liability for a defective product. The railroad counterclaimed against the manufacturer for indemnity. Immediately before trial the plaintiff and the railroad executed an agreement in which the plaintiff acknowledged receipt from the railroad of the sum of $57,500 as a loan which she promised to pay from any judgment she was entitled to collect from the manufacturer only to the extent of $57,500. Plaintiff also agreed to pursue any reasonable and legal means to collect any judgment she might obtain against the manufacturer.

On plaintiff Reese's motion the railroad was dismissed without prejudice. The jury returned a $149,000 verdict for plaintiff against the manufacturer. On the railroad's counterclaim the trial court found for the manufacturer and ruled the loan agreement constituted a covenant not to sue and held plaintiff was not obligated to repay the sum advanced and the trial court set off the $57,500 amount of the loan against the verdict awarded plaintiff. The appellate court (5 Ill. App. 3d 450, 283 N.E.2d 517) held the loan agreement enforceable according to its terms and concluded it should be repaid by the plaintiff to avoid double recovery.

The court in *Reese* (55 Ill. 2d 356, 303 N.E.2d 382) held the validity of so-called "loan receipt agreements" was a question of first impression in Illinois. It stated, "In view of the fact that the railroad was initially sued under the Federal Employers' Liability Act, we assume arguendo that it could have been found to be a joint tortfeasor together with the manufacturer of the defective crane." (55 Ill. 2d 356, 362.) The court further stated, "Thus, in considering the efficacy of loan receipts in Illinois, we contemplate those situations in which a concurrent tortfeasor, perhaps otherwise unable to obtain indemnity from his joint tortfeasor, may escape liability and judgment by loaning funds to a plaintiff. Thus framed, the question becomes whether our policy of denying contribution between joint tortfeasors outweighs the considerations favoring private settlement of lawsuits. We think it does not." (55 Ill. 2d 356, 363.) Regarding the argument that such an agreement violates the

rule of no contribution between joint tortfeasors, the court noted the principal objection to contribution is that it constitutes the use of the courts for the relief of wrongdoers and that such objection is absent from a private out-of-court arrangement.

The court in *Reese* (55 Ill. 2d 356, 364, 303 N.E.2d 382) continued "Moreover, there are salutary effects of the loan agreement which warrant our approval. Because of the potential savings to some tortfeasors, funds under this arrangement will be more readily offered to injured plaintiffs than is the case under a covenant to forbear from suit or an outright settlement. Secondarily, loan receipts may tend to simplify complex multi-party litigation, and are desirable from the standpoint of facilitating private resolution of litigation." We note *Reese* (55 Ill. 2d 356, 303 N.E.2d 382) involved personal injuries, an area in which traditionally assignments have been prohibited.

In the instant case the loan agreement did in fact result in funds being offered to plaintiff prior to the commencement of any litigation. Both defendant Escort Service and Machinery Transports were potential concurrent tortfeasors. Machinery Transports stands to lose the entire amount involved in the loan agreement should plaintiff lose in its suit against Escort Service. Escort Service, even if held liable to plaintiff, in turn may bring an indemnity or third-party action against Machinery Transports.

■■ Defendant Escort Service argues the agreement between plaintiff and Machinery Transports and its cargo insurer was a release. In support of its argument Escort Service cites the affidavit of plaintiff's vice president in which he refers to the receipt of the $50,100 as a "settlement." In a layman's eyes a loan receipt agreement could certainly be referred to as a settlement. This does not justify characterizing what appears by its very language to be a loan receipt agreement as anything else. In accordance with *Reese v. Chicago, Burlington & Quincy R.R. Co.*, 55 Ill. 2d 356, 303 N.E.2d 382, sanctioning such agreements, we hold the agreement in the instant case valid as a loan receipt agreement and not a release. (See also 1976 U. Ill. L.F. 351.) Accordingly, it is no defense to the action by the carrier Machinery Transports and its cargo insurer in plaintiff's name where payment of the $45,100 was by check of the insurer and that by endorsement of the check the consignee was required to execute the aforementioned agreement.

For the foregoing reasons the judgment of the circuit court of Peoria County is affirmed.

Judgment affirmed.

STENGEL and BARRY, JJ., concur.