PAMELA BROWN, Plaintiff-Appellant, v. TIMPTE INCORPORATED *et al.*, Defendants-Appellees (Kroblin Refrigerated Express, Inc., *et al.*, Defendants).

First District (5th Division)   No. 82—0775

Opinion filed November 1, 1985.

1054

John C. Mullen, of Mullen, Clancy & Associates, Ltd., of Chicago, for appellant.

Sam L. Miller, Ltd., of Chicago, for appellee Timpte Incorporated.

Johnson, Cusack & Bell, Ltd., of Chicago, for appellee Rath Packing Company.

JUSTICE PINCHAM delivered the opinion of the court:

Plaintiff, Pamela Brown, was a passenger in a semitractor driven by defendant William Haines. The semitractor was hauling a trailer manufactured by defendant Timpte Incorporated (Timpte). The trailer and semitractor were owned by defendant Kroblin Refrigerated Express, Inc. (Kroblin). The trailer was loaded with 36,000 pounds of meat, hung from hooks by defendant Rath Packing Company (Rath). The semitractor and trailer turned over and fell on the passenger side

while traveling through a curve. Plaintiff was injured. Her injuries necessitated amputation of her right leg and her left leg below the knee.

Plaintiff's causes of action against defendants were under strict liability and negligence theories. Plaintiff alleged that the trailer was dangerous because it was designed with a high center of gravity and was unstable with certain loads. Plaintiff further alleged that the meat was loaded in the trailer in such a way that it swung so high from side to side that it pulled the trailer over when the trailer traveled even under the speed limit.

At trial, the driver Haines testified that he felt the truck and trailer pull to the right just before he entered the curve. A witness to the accident, John York, testified that the truck drove straight off the road without following the curve. The jury returned a $2.1 million verdict against defendants Kroblin and Haines and a verdict that defendants Timpte and Rath were not negligent. Judgments were entered on the jury verdicts.

Nearly four months later, plaintiff entered into a covenant not to sue Kroblin and Haines and accepted payment from them in the amount of $1,875,000. The covenant not to sue, in pertinent part, was as follows:

> "I, Pamela Brown *** in consideration of the sum of one million eight hundred seventy five thousand dollars to be paid by Kroblin Refrigerated Express, Inc., William Haines, Katlo Contractors, Inc. and Great West Casualty Company the receipt of which is hereby acknowledged, do by this instrument covenant with said Kroblin Refrigerated Express, Inc., William Haines, Katlo Contractors, Inc. and Great West Casualty Company to forever refrain from instituting, pressing or in any way aiding any claim, demand, action or causes of action, for damages, cost[s], loss of service, expenses or compensation for, on account of, or in any way growing out of, or hereafter to grow out of an accident which happened to me, Pamela Brown *** whereby I sustained personal injuries and other damages and for the above consideration I hereby agree to hold the said Korblin Refrigerated Express, Inc., William Haines, Katlo Contractors, Inc. and Great West Casualty Company harmless from any damages to myself resulting from said accident."

The trial court thereafter set aside the jury verdict against Haines and Kroblin and entered an order on March 25, 1982, which stated, in pertinent part:

> "That part of the order of February 26, 1982 denying the defendants' post-trial motion be and is hereby vacated and set

aside;

The judgment order of November 25, 1981 entering judgment in favor of plaintiff and against [Kroblin and Haines] be and is hereby set aside and held for naught; and

So much of the verdict of the jury entered November 25, 1981 as found against said defendants *** and as assessed Pamela Brown's damages in the amount of $2,100,000 be and is hereby set aside and held for naught.

It is further ordered, by virtue of the compromise settlement between said parties, that the Complaint of the plaintiff, Pamela Brown, against said defendants be and is hereby dismissed with prejudice.

It is further ordered that the orders of this Court dated February 26, 1982 and November 25, 1981[1] as they relate to the plaintiff's case against defendants Rath Packing Company and Timpte Incorporated remain in full force and effect, and the Complaint of the plaintiff against defendants Rath Packing Company and Timpte Incorporated remains in full force and effect."

Plaintiff appeals the verdict of not guilty in favor of defendants Timpte and Rath and cites five alleged trial errors she contends deprived her of a fair trial. In rebuttal, defendants Timpte and Rath assert that plaintiff's appeal should be dismissed because plaintiff accepted payment from defendants Kroblin and Haines in satisfaction of the judgment against them and that by so doing, plaintiff discharged defendants Timpte and Rath from liability. Thus, Timpte and Rath assert, any further proceedings should be dismissed. Timpte and Rath

---

[1]The trial court's order of February 26, 1982, denied the defendants' post-trial motions and granted Timpte and Rath additional time "to file a memorandum regarding the counterclaims motions." The record does not reveal an order dated November 25, 1981. An order dated November 30, 1981, states:

"This cause coming on for jury trial and the jury having deliberated and rendered a verdict in favor of the plaintiff Pamela Brown and against the defendants Kroblin Refrigerated Express, Inc., a Corporation, and William N. Haines in the amount of $2,100,00.00:

IT IS HEREBY ORDERED that judgment in the amount of $2,100,000.00 (Two Million One Hundred Thousand Dollars) and interest and costs in favor of Pamela Brown and against Kroblin Refrigerated Express, Inc., and William N. Haines is hereby entered upon the verdict of the jury nunc pro tunc as of November 25, 1981.

It is further ordered that judgment is entered on the finding of the jury against the plaintiff Pamela Brown and in favor of the defendants Rath Packing Company and Timpte Incorporated nunc pro tunc as of November 25, 1981."

filed a motion to dismiss this appeal, which we have taken with the case. The dispositive issue presented by this appal, therefore, is whether the instrument executed by plaintiff, the covenant not to sue defendants Kroblin and Haines, plaintiff's acceptance of payment from Kroblin and Haines and the trial court's subsequent setting aside of the judgment against Kroblin and Haines, served to also discharge Timpte and Rath from liability to plaintiff. We think not.

■■ Whether a document is construed as a release, an accord and satisfaction or a covenant not to sue depends upon the words used, the amount paid, the substance of the agreement and the intention of the parties. (*Hulke v. International Manufacturing Co.* (1957), 14 Ill. App. 2d 5, 24-25, 142 N.E.2d 717.) Courts have held that the intention of the parties is controlling. *Pate v. City of Sesser* (1979), 75 Ill. App. 3d 233, 237, 393 N.E.2d 1146.

■ A covenant not to sue one tortfeasor does not have the same legal effect on the liability of other tortfeasors who are not parties to the covenant. A covenant not to sue one of several joint tortfeasors does not automatically release the others (31 Ill. L. & Prac. *Releases* sec. 28 (1957); *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1973), 10 Ill. App. 3d 465, 470, 294 N.E.2d 319, *aff'd in part, rev'd in part* (1974), 57 Ill. 2d 298, 312 N.E.2d 259) but affects only the right to bring suit and not the cause of action itself. (*Pate v. City of Sesser* (1979), 75 Ill. App. 3d 233, 237, 393 N.E.2d 1146; *Hitchcock Air Conditioning, Heating & Piping Co. v. Hazen* (1976), 43 Ill. App. 3d 483, 487-88, 357 N.E.2d 69.) A person is only entitled to one full compensation for his injuries, however, and amounts paid by one or more of the joint tortfeasors either before or after judgment are applied to reduce the amount of damages recoverable from those tortfeasors remaining as defendants in the suit. (*Popovich v. Ram Pipe & Supply Co.* (1980), 82 Ill. 2d 203, 209, 412 N.E.2d 518; *Schutt v. Allstate Insurance Co.* (1985), 135 Ill. App. 3d 136, 140.) Double recovery for the same injury is to be condemned. (*Popovich v. Ram Pipe & Supply Co.* (1980), 82 Ill. 2d 203, 209; *Schutt v. Allstate Insurance Co.* (1985), 135 Ill. App. 3d 136, 140.) A plaintiff can have only one satisfaction for an injury. (*Dial v. City of O'Fallon* (1980), 81 Ill. 2d 548, 558, 411 N.E.2d 217.) In this regard, the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1981, ch. 70, par. 302(c)) provides:

"When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but is

reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater."

In the same tenor as the aforementioned statute is the Restatement (Second) of the Law of Torts sec. 885(1) (1979), and Comment (d) thereto, which state:

"(1) A valid release of one tortfeasor from liability for a harm, given by the injured person, does not discharge others liable for the same harm, unless it is agreed that it will discharge them.

\* \* \*

*Comment*:

\* \* \*

(d.) *Limits and effect of rule.*

A covenant not to sue clearly indicates by its form that it is not intended to discharge the liability of other tortfeasors jointly liable. On the other hand, a document in the usual form of a release given to one of them is normally construed as intended to discharge all claims for the tort and operates to discharge others also liable for the same harm. If, however, there is language in the release that manifests that the releasor intended to preserve his rights against the others, effect is given to this manifestation."

Defendants Timpte and Rath challenge these legal principles and contend that they have been discharged from any alleged liability in this cause of action by virtue of the strict common law rule that a release of one tortfeasor releases all tortfeasors. (*McClure v. Lence* (1951), 345 Ill. App. 158, 166, 102 N.E.2d 546.) Defendants additionally cite section 95 of the Restatement of the Law of Judgments (1942), and section 886 of the Restatement of the Law of Torts (1939), along with Comment (a) of that section, which provide:

"Sec. 95 Discharge of Judgment Against One of Several Co-Obligors The discharge or satisfaction of a judgment against one of several persons each of whom is liable for a tort, breach of contract, or other breach of duty, discharges each of the others from liability therefor."

"Sec. 886 Satisfaction of a Judgment Against One of Several Tortfeasors

The discharge or satisfaction of a judgment against one of several persons each of whom is liable for \* \* \* each of the others from liability therefor.

*Comment*:

a. \*\*\*. Likewise, a payment in full by or on behalf of one of the judgment debtors which is accepted by the judgment creditor discharges the others. This is true where no judgment has been obtained against the other tortfeasors, where judgments have been obtained against the other tortfeasors either for the same amount or for larger amounts in separate actions, and where judgments have been obtained against the others in the same action. The rule applies where the tort was the act of one of them for which the others were liable, where all acted in concert, and where the act of each was merely a contributing factor to the harm. It is immaterial whether the one paying was, with reference to one who has not paid, primarily or secondarily liable.

Where action has been brought against two tortfeasors, a discharge or satisfaction of judgment against one prevents the accrual of further costs against the other."

Based on the foregoing authority, the argument of defendants Timpte and Rath must fail. First, the instrument in issue here, the covenant not to sue, was not entered into between plaintiff and Timpte and Rath. Kroblin, Haines, Katlo and Great West were the only parties named. Our supreme court has stated that pursuant to section 2(c) of the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1981, ch. 70, par. 302(c)), a release does not discharge other tortfeasors from liability unless they were designated by name or otherwise specifically identified. *Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196, 201, 461 N.E.2d 361.

Also, plaintiff's covenant not to sue contains no language which indicates that the money received represented satisfaction for the entire injury. The document merely states that in consideration of the money, plaintiff covenants with the parties named "to forever refrain from instituting, pressing or in any way aiding any claim \*\*\* for damages \*\*\*." Where an instrument contains a clear reservation of rights, it will be construed as a covenant not to sue rather than as a release, leaving the liability of other joint tortfeasors unimpaired. (*Mitchell v. Weiger* (1977), 56 Ill. App. 3d 236, 371 N.E.2d 888; *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1973), 10 Ill. App. 3d 465, 470-71, 294 N.E.2d 319, *aff'd in part, rev'd in part* (1974), 57 Ill. 2d 298, 312 N.E.2d 259.) We also note that the strict common law rule that a release of one tortfeasor releases all tortfeasors, despite a manifested intention to the contrary, has not been honored. *Mitchell v. Weiger* (1977), 56 Ill. App. 3d 236; see also Calamari & Perillo, Contracts sec. 20—3, at 742 (2d ed. 1977), which addresses the conse-

quences of joint liability by joint promisors.

In our opinion, therefore, the document in issue here must be construed as the parties intended, a covenant not to sue. This opinion is further buttressed by the fact that the words "release," "discharge," "full settlement," or "satisfaction" do not appear anywhere in the document, that plaintiff never filed or signed a satisfaction of judgment and that the amount paid under the covenant was less than the judgment amount. These facts lead us to conclude that it was not the intention of plaintiff to release defendants Timpte and Rath from liability. Rather, it was plaintiff's intent to execute just what the instrument states that it is, *i.e.*, a covenant not to sue, in and by which plaintiff reserved her rights against defendants Timpte and Rath and in and by which the amount paid under the covenant should be deducted from the total damages plaintiff sustained.

Next, plaintiff contends that five trial errors occurred which deprived her of a fair trial and constitute reversible error. Plaintiff contends that each of the alleged errors were ruled on by the trial court after an objection was raised by either counsel for defendants Haines or counsel for defendant Kroblin and that the trial errors caused by defendants Timpte and Rath prejudiced plaintiff's case against those two defendants. Plaintiff asserts that the purpose of an objection is to obtain a ruling by the trial court and that she therefore "should not [have been] required to chime in" or to offer the same objection when one had already been made by one of the defense attorneys. Defendants Timpte and Rath respond that by not objecting, plaintiff chose to allow the defendants to "battle it out" between themselves and that her failure to object effectively waived any alleged trial errors on review. We agree.

We again point out that the trial of this matter involved four defendants, Kroblin, the trucking company which owned the trailer and semitractor and under whose permit the meat was being transferred, Timpte, which manufactured and designed the trailer, William Haines, the driver of the semitractor and Rath Packing Company, which hung the meat in the trailer. Each defendant was represented by a different attorney. The various interests of the defendants during trial frequently were conflicting and incompatible. Nevertheless, plaintiff's attorney was obligated to protect plaintiff's interests by making the appropriate objections, by joining in and adopting the objections made by the other litigants or by denouncing or disclaiming such objections.

The first trial error of which plaintiff complains arises out of the direct and cross-examination of attorney Craig Tomassi, an associate in the law firm that represented Kroblin in this law suit. Tomassi was

asked by the attorneys for Timpte and Rath about his written memorandum of his pretrial interview of the driver of the semitractor, defendant William Haines. The attorneys for Timpte and Rath attempted to use the memorandum to impeach Haines, who had previously testified at trial. At the end of this examination, Kroblin's attorney moved for a mistrial, which was denied. When Kroblin's attorney moved to strike this testimony, the court asked plaintiff's counsel if he had anything to say, and plaintiff's counsel responded that he had no comment. The record reveals that plaintiff made no objection during these entire proceedings.

After the accident, Haines was fired. His employment personnel file stated that the reason for his discharge was "major preventable accident/unauthorized passenger." This entry was based on the opinion of Norm Young, vice-president of defendant Kroblin. The trial court ruled that this personnel file was inadmissible. Plaintiff contends that counsel for defendant Timpte misused the inadmissible personnel file (which was Kroblin's exhibit number 19) by asking leading questions from it and that counsel set the file on his table in the courtroom so that the jurors could read it while they sat in their seats and when they entered and left the courtroom. Plaintiff now complains that Timpte's attorney improperly asked the witness, Norm Young, what decisions he made as to the cause of the accident and that in an effort to reveal to the jury the contents of the personnel file, counsel asked Young the following questions:

"Q. Do you in your capacity, whatever your title is, in your job function or role with regard to safety, do you from time to time make a determination of what is a preventable accident?

\* \* \*

Now on your drivers at your company, each of the drivers has a personnel file, doesn't he? [Objection by counsel for Kroblin sustained.] You were asked a question this morning regarding the word 'preventable accident.' Is that a word that's used in your business as safety and in your other title that you have, compliance?

\* \* \*

Mr. Young, you told us some of the duties that you have. Among those duties, is it also your job to determine whether or not an accident is a preventable accident?

\* \* \*

In every one of the—this particular instance, now there's an accident file that was created by the Kroblin Company, is that correct, sir?"

Plaintiff further cites the following cross-examination of Allen Kroblin, president of defendant Kroblin Refrigerated Express, Inc., as evidence of a pattern of improper examination. Counsel for Timpte queried:

"Q. Each driver has a separate personnel file?

A. Yes.

Q. And then the results of the investigation, whether it's favorable or unfavorable to the driver, would then be put into his personnel jacket or personnel file, is that correct, sir?"

Plaintiff's objection to this colloquy was simply that "[t]his has all been covered prior to this and the Court has ruled on this." The court responded, "It's true, counsel. If that's where you are going, and there's been a ruling on that already, and unless there is some—." Counsel for Timpte then resumed his examination of the witness after stating that he "just wanted to get this much out of this man. That was the extent of it." Plaintiff did not otherwise object to the questions.

Plaintiff further cites as error that counsel for Timpte insinuated in his closing argument that counsel for defendant Haines spoke to Haines and "suggested [that] maybe he shouldn't remember 'those things.' " Plaintiff contends that counsel's statements implied that other counsel in the case "were instructing witnesses to lie. This is a strong allegation."

Plaintiff also contends that it was error for the court to bar any expert testimony by Todd Hines, who was employed by a company hired by Kroblin to move the meat from the overturned trailer to a replacement trailer. Under cross-examination by counsel for Timpte, Hines was asked whether he held himself out as an expert in loading meat. Hines answered that he was not. Again, plaintiff made no objections to the foregoing assignments of error.

The record further reveals that plaintiff did not object to the testimony of the post-accident investigation police officer who conducted an "experiment" by driving a squad car off the road where the accident occurred to determine where he would hit the guardrail and to see how his steering wheel felt when he did it.

It is noteworthy that the trial occurrences of which plaintiff complains arose out of what might be construed as the defendants' efforts to shift liability for the accident to each other. Apparently, as a trial strategy, plaintiff's attorney decided to take advantage of the controversies between the defendants by remaining silent and not objecting. Plaintiff's failure to object or adopt the objections of the defendants precludes plaintiff from a belated reliance thereon on appeal.

■ It is a fundamental rule of law in Illinois that a party desiring

to preserve a question for review must make appropriate objection in the court below, and that a failure to object to preserve a question for review constitutes a waiver. (*Vee See Construction Co. v. Luckett* (1981), 102 Ill. App. 3d 444, 446-47, 430 N.E.2d 91.) Although in the case before us there were four defendants who objected at various times, this rule, as to plaintiff, applies with equal force.

In *Martino v. Barra* (1973), 10 Ill. App. 3d 97, 104, 293 N.E.2d 745, a wrongful death action, one of the several defendants assigned as error the trial court's admission into evidence the testimony of another defendant. Rejecting that contention, the appellate court observed that the appealing defendant's counsel had failed to object. Counsel for one of the other defendants objected, but, the court further ruled, that the objection neither benefited the nonobjecting defendant nor the plaintiff.

The appellant's failure to object in the trial court was also fatal in *Kinsey v. Kolber* (1982), 103 Ill. App. 3d 933, 947, 431 N.E.2d 1316, where the plaintiffs were awarded damages for injuries sustained in an automobile accident. The defendant appealed, assigning several alleged trial errors as grounds for reversal. Denying that request, the court ruled:

> "Plaintiffs also claim that no objections were made to the procedure established by the court, to the questions subsequently asked, or to the remarks made during closing argument, and that these issues have therefore been waived on appeal. [Citations.] Plaintiffs also claim that no objections were made to the questions asked during *voir dire* concerning the relationship of some prospective jurors with insurance, or the friendship of the parties, and that defendant has therefore waived these issues as well. [Citation.]
>
> Defendant has not pointed out any place in the record where he made an objection to the questions and remarks at issue herein, and we therefore agree with plaintiffs that these issues have been waived on appeal."

Also of note is *Nelson v. Union Wire Rope Corp.* (1963), 39 Ill. App. 2d 73, 187 N.E.2d 425, *aff'd in part, rev'd in part on other grounds* (1964), 31 Ill. 2d 69, 199 N.E.2d 769. In that case, the plaintiffs appealed the not-guilty verdict for personal injuries and wrongful death against two of the three defendants. The court's reasoning in *Nelson* is relevant to the determination we must make in the pending case. The court stated:

> "Finally, as to alleged evidence errors, plaintiffs contend that certain hypothetical questions put to one of Union's expert wit-

nesses improperly invaded the province of the jury. We conclude that the questions were proper [citation] but shall not comment on them *** because plaintiffs made no objections at the trial and are, therefore, not in a position to claim error on that point in this court. *** It is true that counsel for American [one of the defendants] interposed objections in the trial court, but plaintiffs did not join in the objections and the record thus preserved by American does not inure to the benefit of plaintiffs." *Nelson v. Union Wire Rope Corp.* (1963), 39 Ill. App. 2d 73, 107-08.

And, in *Bunch v. Rose* (1973), 10 Ill. App. 3d 198, 205, 293 N.E.2d 8, the court ruled that an objection by one of the two defendants, which was neither joined in nor adopted by the other defendant, did not inure to the benefit of the nonobjecting defendant. Based on the court's rationale in *Bunch, Nelson, Kinsey* and *Martino*, it becomes apparent in the case at bar that plaintiff's failure to object, join in or adopt an objection by one of the defendants' attorneys cannot be said to inure to her benefit.

■■ We readily distinguish plaintiff's case cited on this issue, *Bruske v. Arnold* (1969), 44 Ill. 2d 132, 137, 254 N.E.2d 453. The supreme court observed in that case that none of the instances relied upon by the plaintiff for reversal were objected to at trial. The court did state that once an objection has been made and a ruling obtained, it is not necessary to repeat the same objection to preserve the point for review, but that rule, in the context of a case such as *Bruske* where there was only one defendant and one plaintiff, is inapplicable to the facts before us where a single plaintiff relies on an objection made by one of several defense attorneys. We thus conclude that plaintiff's alleged errors in the case at bar have been waived for purposes of appeal.

For the reasons stated herein, the judgment of the trial court in favor of defendants Timpte and Rath is affirmed.

Affirmed.

MEJDA, P.J., and LORENZ, J., concur.