PHILLIP AKERS, Plaintiff-Appellant, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Defendant-Appellee.

First District (5th Division)   No. 1—87—2316

Opinion filed August 25, 1989.

David L. Buffen, of Rittenberg & Buffen, Ltd., and David A. Novoselsky & Associates, both of Chicago (David A. Novoselsky and Kathleen M. Krist, of counsel), for appellant.

Santa Fe Southern Pacific Corporation and Lord, Bissell & Brook, both of Chicago (Weston W. Marsh and Kenneth A. Peterson, of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff, Phillip Akers, appeals from a jury verdict finding defendant, The Atchison, Topeka and Santa Fe Railway Co., not liable for plaintiff's personal injuries. Plaintiff raises the following three issues on appeal: (1) whether an expert witness who was originally hired by plaintiff should have been barred from testifying for defendant at trial; (2) whether plaintiff was prejudiced when the jury learned that the expert was originally hired by plaintiff; and (3) whether defendant should have been required to pay plaintiff the fee plaintiff paid to the expert. For the following reasons, we affirm.

Plaintiff filed a third-amended complaint against defendant for negligence and strict liability. He alleged that on October 23, 1980, he was employed as a warehouseman by Meehan Seaway Service and was loading materials in a railroad car owned by defendant. As he was loading materials, the load divider of the car unhinged and struck plaintiff. Plaintiff suffered personal injuries.

After answering the complaint, defendant sent interrogatories to plaintiff which included a request for plaintiff to identify each expert witness he planned to call at trial. On November 25, 1981, plaintiff responded that he had not retained an expert at that time.

Subsequently, plaintiff identified Edward McLean as his engineer-

ing expert, although the date of the disclosure is not apparent from the record. Plaintiff admits in his appellate brief that McLean was his testifying expert at trial rather than his consulting expert.

When defendant deposed McLean, he testified, in part:

"Q. I think we discussed in the earlier deposition that when you read the deposition transcript of [plaintiff's] deposition, that he had stated he had got down and looked and saw the pins all the way into the tracks.

A. That's right.

Q. I think you also indicated that you've got no reason to disagree with that statement?

A. That's right.

\* \* \*

Q. With all those facts in mind that you've discussed already, based on [plaintiff's] testimony, do you have an opinion as to how the door could have popped out of its track if the pins were all the way in place?

A. \*\*\* It's hard for me to visualize just exactly what happened. If the pins were in place as he indicated and the pressure was as he indicated, it's awfully hard to determine to what extent the pins were engaged. He says they were engaged, so in taking his statement, I can't reason that the occurrence should have occurred."

On September 15, 1986, defendant sent plaintiff a letter stating it tentatively planned to call McLean as its expert but could not confirm until plaintiff answered interrogatories identifying his testifying expert witnesses.

Two weeks later, on September 30, 1986, in response to an interrogatory asking plaintiff to identify each of his testifying expert witnesses, plaintiff identified John Stilson as his engineering expert. Plaintiff did not identify McLean as one of his testifying expert witnesses.

On October 14, 1986, an order was entered which in part stated, "It is furthered [sic] ordered that plaintiff will not object to the disclosure of James Bennett and Ed McClean [sic] as experts."

On March 6, 1987, several weeks before trial, plaintiff again responded to interrogatories by identifying Stilson as his engineering expert at trial and not identifying McLean.

The jury trial began on March 25, 1987, with opening statements. In his opening statement, without objection from plaintiff, defense counsel stated:

"Ladies and gentlemen, in addition to Mr. Brown, and as one

of our last pieces of the puzzle, we are going to call Ed Mc-Lean. Mr. McLean is our expert. ***

Mr. McLean is going to tell you that he made tow inspections of an Evans Dual Air-Pak load divider door. He's also going to tell you that when he made those inspections he had been retained by and was being paid by the plaintiff in this case."

The next day, the parties' attorneys and the judge had a conference in chambers. Plaintiff admitted he telephoned McLean the evening before and McLean agreed to meet with plaintiff that morning prior to going to court. Plaintiff was upset because rather than meeting with plaintiff, McLean met with defendant. Plaintiff argued that when he retained McLean, he gave McLean his "theory of the case *** [and] opened up [his] file to him" and claimed that defendant persuaded McLean to tell him what McLean learned. Plaintiff asked that McLean be barred from testifying but the judge denied the request because plaintiff had known defendant was planning to call McLean as a witness for a substantial period of time prior to trial. The judge, however, allowed plaintiff to meet with McLean before he testified.

On April 1, 1987, the day McLean testified, plaintiff again moved to bar him from testifying but his motion was denied.

When McLean testified for defendant on direct examination, the following occurred:

"Q. Were you paid for your time when you gave your depositions?

A. Yes, Sir.

* * *

Q. Was [that] the opinion you rendered when you were testifying on behalf of the plaintiff?

[Plaintiff's attorney]: Objection. He never testified before.

THE COURT: Sustained. That question will be disregarded by the jury.

BY [defendant's attorney]:

Q. I believe last time you mentioned that you gave some deposition in this case, is that right?

A. I did.

Q. At the time you gave those depositions, were you asked for your opinions?

A. I was.

Q. At the time you gave those opinions, by whom were you employed?

A. By [a]ttorney John Sands.

Q. Who was Mr. Sands representing?

A. He was representing [plaintiff].

Q. How much were you paid by Mr. Sands?

A. $2578.26.''

On cross-examination from plaintiff, McLean testified:

"Q. You were brought into this case by Mr. Sands, [plaintiff's] original lawyer?

A. Yes, sir.

\* \* \*

Q. And Mr. Sands on behalf of the—[defendant's attorney] also paid you a sum of money to testify here today, your usual hourly rate or whatever is agreed to?

A. He has agreed to. He hasn't paid me at all yet.

Q. And since October of last year, you have spoken to [defendant's attorney] on the phone?

A. I believe once or twice.

Q. And you have met with him in his office?

A. I have.''

On redirect examination, McLean testified:

"Q. \*\*\* Now, on cross-examination, Mr. McLean, I believe you said you had no reason to disbelieve the plaintiff that the pins appeared fully engaged?

A. No. What I said was that I didn't know how the accident happened if the pins were fully engaged as the plaintiff stated.

Q. In other words, just so I understand, if the pins were fully engaged, this accident could not happen?

A. That's right, in my opinion.''

The record on appeal does not contain a complete transcript of proceedings of the parties' closing argument. A few pages of defendant's closing argument were attached to defendant's response to plaintiff's post-trial motion. In defendant's closing argument, he stated:

"Now, ladies and gentlemen, Mr. McLean's testimony should tell you something about [p]laintiff's case. He told you he gave the same opinions when he was working for the plaintiff as he did here at trial. How did the plaintiff react to that? They spent time indirectly trying to attack Mr. McLean's ethics. That, ladies and gentlemen—

[Plaintiff's attorney]: Objection, your Honor. I wasn't attacking Mr. McLean's ethics. I was attacking his ethics.

\*\*\*

THE COURT: Well, the jury has heard the evidence. This is

argument. Ladies and gentlemen, whatever the jury said—the lawyers say is not evidence. If anything the lawyers say is not consistent with what you heard from the witness stand, disregard it."

The jury returned a verdict finding defendant not guilty and plaintiff's motion for new trial was denied. Plaintiff now appeals.

OPINION

■■ Initially, we must address the parties' failure to comply with certain procedural rules of our supreme court. First, Supreme Court Rule 341(e)(6) provides that the statement of facts section of a brief must contain facts "stated accurately and fairly without argument or comment." (107 Ill. 2d R. 341(e)(6).) Each party argues that the other's statement of facts was not based on the record. Plaintiff's brief is replete with assertions of fact which are supported by no more than statements made in his post-trial motion and arguments made at the trial court level. Defendant, to a lesser degree, also violated the rule. The parties' failure to follow the rule has made resolution of this appeal unduly burdensome and this practice should not be continued in the future. We have reviewed the record on appeal and have considered only facts supported by the record in rendering this decision.

Second, Supreme Court Rule 323(a) provides a procedure for the appellee to include additional portions of the proceedings in the record on appeal. (107 Ill. 2d R. 323(a).) Rather than follow this procedure, defendant attached an incomplete transcript of proceedings to his brief which was not included in the record. This transcript is not properly part of the record on appeal and was not considered by this court.

Third, Supreme Court Rule 323(c) provides that when a verbatim transcript of proceedings is not available, appellant may serve a proposed report of proceedings within 14 days from filing the notice of appeal. (107 Ill. 2d R. 323(c).) Instead, plaintiff's attorney signed two affidavits and attached them to his reply brief in an attempt to explain the court proceedings that occurred on a day when a verbatim report of proceedings was not available. "[A]n attorney's affidavit cannot be used to supplement the record in lieu of a transcript or a bystanders report." (*Smith v. Central Illinois Public Service Co.* (1988), 176 Ill. App. 3d 482, 497, 531 N.E.2d 51, 61.) Accordingly, plaintiff's affidavits were not considered on appeal.

I

■■ Illinois courts have previously determined that an expert wit-

ness who was originally retained by one party can properly testify at trial for that party's opponent. In *People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208, *rev'd in part on other grounds* (1971), 403 U.S. 946, 29 L. Ed. 2d 855, 91 S. Ct. 2279, defendant hired a fingerprint expert to assist him in evaluating the evidence and to render an opinion. At trial, the prosecution called the expert to testify in its behalf. On appeal, defendant argued the expert should not have been allowed to testify on behalf of the prosecution based on the attorney-client privilege. Our supreme court rejected that argument, stating:

"A witness is not the property of either party to a suit and simply because one party may have conferred with a witness and even paid him for his expert advice does not render him incompetent to testify for the other party." *Speck*, 41 Ill. 2d at 200, 242 N.E.2d at 221.

In *Department of Business & Economic Development v. Schoppe* (1971), 1 Ill. App. 3d 313, 272 N.E.2d 696, the petitioner subpoenaed an expert witness in a condemnation proceeding who was originally hired by defendants to appraise their property. Before trial, defendants dismissed the expert. The expert testified at trial for petitioner. On appeal, the court found that allowing the expert to testify was proper, relying on the above-quoted language in *Speck*.

In the present case, plaintiff identified McLean as his expert and he was deposed by defendant. Subsequently, however, plaintiff identified another engineering expert to testify at trial rather than McLean. Also, an order was entered stating that plaintiff would not object to defendant's disclosure of McLean. It was apparent that plaintiff no longer intended to use McLean as his testifying expert witness. Plaintiff argues he never discharged McLean from his contractual obligations; however, this is a matter between plaintiff and McLean. Following *Speck*, the mere fact that plaintiff originally hired McLean did not render him incompetent to testify at trial for defendant.

Plaintiff further argues that defendant should have been barred from communicating with McLean without plaintiff's consent. We note that the record only established that defendant communicated with McLean since October of 1986, which was after plaintiff filed his answers to interrogatories identifying another testifying expert rather than McLean.

Plaintiff urges the application of *Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581, 499 N.E.2d 952, where a defense attorney in a medical malpractice action was found in contempt of court for refusing to obey a court order which barred him from engaging in

*ex parte* conversations with one of plaintiff's treating physicians. The appellate court affirmed, relying in part on the physician-patient privilege (Ill. Rev. Stat. 1985, ch. 110, par. 8—802), which prohibits a physician from disclosing information he acquired in treating a patient. The court found the privilege that attaches to a physician-patient relationship justified barring *ex parte* communications between the physician and defense counsel.

Plaintiff in this case acknowledges that the holding of *Petrillo* was based on the physician-patient privilege but argues that the same deference should be given in the present case based on the work product exemption from discovery. Plaintiff claims he disclosed work product material to McLean and that McLean used this information when he testified for defendant.

Supreme Court Rule 201(b)(2) provides, in part:

> *"Privilege and Work Product.* \*\*\* Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney." (107 Ill. 2d R. 201(b)(2).)

Such materials protected from discovery are generally referred to as work product. We note that "the advice of an expert to an attorney concerning technical matters or technical interpretations of facts [are] not protected work product and [are] subject to discovery." Ill. Ann. Stat., ch. 110A, par. 201, Historical and Practice Notes, at 232 (Smith-Hurd 1985), citing *Consolidation Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, 432 N.E.2d 250.

Here, plaintiff argues that he disclosed work product material to McLean which was then disclosed to defendant. Supreme Court Rule 201(c)(1) provides that a party may move for a protective order "denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." (107 Ill. 2d R. 201(c)(1).) A party's mere assertion that certain material is exempt from discovery is not sufficient. See *Monier v. Chamberlain* (1966), 66 Ill. App. 2d 472, 213 N.E.2d 425, *aff'd* (1966), 35 Ill. 2d 351, 221 N.E.2d 410.

In this case, plaintiff has failed to adequately establish that any work product material was even involved. At no stage in the proceedings has plaintiff identified any work product material that he disclosed to McLean. Plaintiff learned by letter dated September 15, 1986, that defendant tentatively planned to call McLean as its expert witness. Subsequently, plaintiff identified another expert witness rather than McLean. On October 14, 1986, an order was entered

which stated that plaintiff would not object to the disclosure of McLean. It should have been clear to plaintiff at this point that defendant planned to use McLean as its expert witness. If there was a danger that certain protected work product which plaintiff allegedly disclosed to McLean would be disclosed to defendant, plaintiff should have sought a protective order or other appropriate relief.

Plaintiff claims he did not realize that defendant had communicated with McLean until the second day of trial. On that day, plaintiff finally moved to bar McLean's testimony on the claim that he "opened up" his file to McLean. However, plaintiff did not identify any material that he disclosed to McLean which was protected from discovery based on work product.

Plaintiff urges that the mere fact defendant communicated with McLean presumes a disclosure of work product relying on *Yates v. El-Deiry* (1987), 160 Ill. App. 3d 198, 513 N.E.2d 519. *Yates*, however, involved the physician-patient privilege and is, therefore, inapplicable to the case at bar.

Under these circumstances, the trial court properly allowed McLean to testify.

## II

■ Plaintiff also argues he was prejudiced when defendant informed the jury that McLean was originally hired by plaintiff.

Plaintiff relies on *Department of Public Works & Buildings v. Guerine* (1974), 19 Ill. App. 3d 509, 311 N.E.2d 722, for his claim that he was prejudiced. *Guerine* involved a condemnation proceeding where the petitioner called an expert appraiser as a witness who had previously been hired by defendants to appraise the property. The trial judge granted defendants' motion *in limine* prohibiting petitioner from revealing to the jury that the expert was first hired by defendant. In affirming the ruling, the court stated, in part, that revealing this information would have prejudiced the jury.

The key distinction between *Guerine* and the present case is that in *Guerine*, defendants filed a motion *in limine* to prohibit testimony of the expert's prior employment with defendant. Here, plaintiff did not seek such protection. In fact, plaintiff did not even raise the issue of prejudice in his objections at trial.

To preserve an issue for appellate review, a party must make the appropriate objection at the trial court level or the issue will be waived. (*Brown v. Timpte, Inc.* (1985), 137 Ill. App. 3d 1053, 485 N.E.2d 488.) When an objection is made, specific grounds must be stated and other grounds not stated are waived on appeal. *Moore v.*

*Farmers Insurance Exchange* (1982), 111 Ill. App. 3d 401, 444 N.E.2d 220.

When the first reference to McLean's prior employment with plaintiff was made in defendant's opening argument, plaintiff did not raise any objection. When subsequent references were made, plaintiff objected to some of the references but not on the issue of prejudice. Plaintiff claims he did not want to "draw too much attention" to the fact that McLean was originally employed by the plaintiff. If this was plaintiff's concern, plaintiff should have requested a side bar at the time or made a motion in chambers to prohibit such testimony.

Despite his failure to object to some references or raise the issue of prejudice when he did object, plaintiff argues that the issue was preserved by raising it in his post-trial motion. In his post-trial motion, however, plaintiff argued he was prejudiced when:

> "Defendant's counsel related to the jury that Mr. McClean [*sic*] \*\*\* was discharged by [p]laintiff because Mr. McClean's [*sic*] views were not favorable to [p]laintiff, when [d]efendant had no reason to believe that [p]laintiff's decision not to call Mr. McClean [*sic*] as an expert was based on that reason."

From this argument it is clear that plaintiff was not objecting to the disclosure of McLean's prior employment with plaintiff but, rather, plaintiff was only objecting to defendant's speculation as to the reason plaintiff did not call McLean as a witness. Accordingly, plaintiff failed to raise the issue that he was prejudiced when the jury learned McLean was originally hired by the plaintiff at the trial court level. An objection to evidence on the grounds of prejudice or relevance cannot be raised for the first time on appeal (*Ogg v. City of Springfield* (1984), 121 Ill. App. 3d 25, 458 N.E.2d 1331), and therefore, we find plaintiff has waived consideration of this issue on appeal. We note parenthetically that the record does not contain any reference made by defendant to the jury as to the reason plaintiff failed to call McLean.

### III

Lastly, plaintiff argues that defendant should have been required to reimburse him for the fee he paid to McLean. McLean testified plaintiff paid him $2,578.26.

Supreme Court Rule 220(c)(6) provides:

> "Unless manifest injustice would result, each party shall bear the expense of all fees charged by his expert witness or witnesses." (107 Ill. 2d R. 220(c)(6).)

The Committee Comments note that a party's expert fee will be real-

located to the opposing party in an "exceptional case" to avoid "manifest injustice." (107 Ill. 2d R. 220, Committee Comments.) The Historical and Practice Notes state that the subsection is

"a sanction, and responds to continuing concerns about fairness in the conduct of discovery from expert witnesses, although the rule makes it clear that in the view of the Supreme Court such discovery will rarely be unfair." Ill. Ann. Stat., ch. 110A, par. 220, Historical and Practice Notes, at 442 (Smith-Hurd 1985).

■ The term "fees" as used in the rule has been interpreted as the nonstatutory fees charged by an expert witness that a party agrees to pay for litigation assistance. (*Lee v. Hyster Co.* (1987), 156 Ill. App. 3d 214, 509 N.E.2d 586.) When a party produces his expert witness for deposition at the request of his opponent, the party must pay the fee charged by his expert. (*Lee*, 156 Ill. App. 3d 214, 509 N.E.2d 586.) In the present case, plaintiff initially identified McLean as his testifying expert witness and, as a result, defendant sought to depose him. It was plaintiff's obligation under Rule 220(c)(6) to pay all fees charged by McLean.

■ Plaintiff argues that because McLean subsequently testified for defendant at trial, manifest injustice would result if defendant did not reimburse plaintiff for the fee he paid to McLean. We do not agree. At the time McLean was deposed and his fee was paid, he was plaintiff's expert. In that deposition, it became apparent that McLean could not explain how the accident occurred if the circumstances were as plaintiff described. Plaintiff subsequently identified another expert rather than McLean. Also, an order was entered stating that plaintiff would not object to the disclosure of McLean. Because McLean's deposition testimony favored defendant, defendant retained McLean. Unfortunately for plaintiff, he identified an expert witness to testify at trial whose opinion was favorable to defendant. Under these circumstances, we cannot say that defendant should be required to pay the fee plaintiff paid to McLean.

Affirmed.

MURRAY, P.J., and PINCHAM, J., concur.