BRIAN P. McINTYRE, Plaintiff and Counterdefendant-Appellant, v. ROBERT E. HARRIS *et al.*, Defendants-Appellees (Twin Oaks Savings Bank, Counterplaintiff-Appellee).

Third District No. 3—98—0089

Opinion filed April 16, 1999.

Brian P. McIntyre, of Ottawa, for appellant.

George C. Hupp, Jr., of Hupp, Lanuti, Irion & Martin, P.C., of Ottawa, for appellees.

JUSTICE LYTTON delivered the opinion of the court:

The plaintiff, Brian P. McIntyre, filed a complaint against the defendants, Twin Oaks Savings Bank (Bank) and Robert E. Harris (Harris), the Bank's executive vice-president. McIntyre alleged that the defendants coerced him into signing a $2,000 personal note made payable to the Bank after the Bank had erroneously paid out a check over McIntyre's valid stop payment order. The defendants counter-claimed, demanding payment on the overdue note. After a bench trial, the court found in favor of the defendants. On appeal, McIntyre contends: (1) the trial court erred in ruling that Sandra Bennett, the payee on the check, was a holder in due course; (2) McIntyre was denied a fair trial when the defendants introduced a copy of his prior felony conviction into evidence; and (3) one of the defendants' exhibits was an altered document. We affirm.

In mid-October 1996 McIntyre's company, Total Home, placed a telemarketing call to Sandra Bennett. As a result, Ray Archie visited Bennett's home and quoted her a price to repair her roof. McIntyre testified that since his company did not repair roofs, he referred the job to Archie. Bennett, however, believed that Archie worked for Total Home.

At trial, McIntyre identified defendant's exhibit 2, a carbon copy of a proposal written by Archie for Bennett's roof. The price for the job was $3,850, including $2,000 for materials. At the bottom of the proposal, Archie had signed his name and written "House Doctor" as the company performing the work. At the top of the proposal, "Total Home" was written in ink.

Around October 19, 1996, McIntyre visited Bennett and told her that in order to complete the job, it was necessary for her to give Archie $2,000 for the materials. Bennett wrote a check to Total Home for $2,000 that day. In return, McIntyre wrote Bennett a check for $2,000 and postdated it to October 28, 1996. Bennett said that McIntyre told her that she could cash his check if her roof was not repaired by October 28, 1996. McIntyre cashed Bennett's check and deposited it in his business account at the Bank. Even so, McIntyre maintained that he was simply acting as an intermediary for Archie.

McIntyre admitted that Bennett's roof was not repaired by October 28, 1996. Nevertheless, on November 14, 1996, he ordered the Bank to stop payment on the check to Bennett.

Around November 27, 1996, the Bank erroneously paid out on McIntyre's check over his stop payment order. After McIntyre learned that the Bank had withdrawn the $2,000 from his business account, he spoke with Harris and told him that the withdrawal would cause his account to be overdrawn. He then went to the Bank and signed an

agreement to pay the Bank $2,000 plus interest due by July 1, 1997. In return, the Bank agreed to leave the $2,000 in his account. McIntyre admitted that he never paid on the note and at the time of trial he was currently 2½ months overdue on it.

Over McIntyre's objection, the defendants submitted an offer of proof that on April 26, 1993, McIntyre pled guilty to unlawful possession of a controlled substance. See 720 ILCS 570/402 (West 1992). The judge ruled that he would allow the evidence of McIntyre's prior felony, but stressed that the conviction was inconsequential because his decision was based on the testimony given during the bench trial.

The judge further stated that he did not believe that McIntyre had no involvement with the roof transaction. He found that Bennett was a holder in due course of the $2,000 check. Therefore, under the Uniform Commercial Code (810 ILCS 5/1—101 *et seq.* (West 1996)), the Bank was subrogated to the rights of Sandra Bennett and could recover the money from McIntyre. The court then found in favor of the defendants on both McIntyre's complaint and the defendants' counterclaim.

After trial, the court granted McIntyre's motion to supplement the record to include evidence that his conviction had been dismissed pursuant to the first offender statute of the Controlled Substances Act. 720 ILCS 570/410 (West 1992). The court denied McIntyre's motion to reconsider, again noting that it did not consider McIntyre's prior conviction in its decision.

## I

### A. UNJUST ENRICHMENT

McIntyre first contends that the Bank is not entitled to a $2,000 reimbursement. In deciding this issue, we must determine two questions under section 4—407 of the Uniform Commercial Code (UCC) (810 ILCS 5/4—407 (West 1996)): (1) whether the Bank properly paid out over a valid stop payment order to prevent unjust enrichment, and (2) whether the Bank can be subrogated to the rights of a holder in due course or of a mere holder of a negotiable instrument. McIntyre contends that the Bank could not be subrogated because Bennett was not a holder in due course.

■ Section 4—407 of the UCC provides that if a payor bank has paid an item over the stop order of the drawer or maker, the bank may become subrogated to the rights of other parties in order to prevent unjust enrichment to the extent necessary to prevent loss to the bank by reason of its payment of the item. Specifically, the payor bank may become subrogated to the rights of: "(1) any holder in due course on the item against the drawer or maker; (2) the payee or any

other holder in due course of the item against the drawer or maker either on the item or under the transaction out of which the item arose; and (3) the drawer or maker against the payee or any other holder of the item with respect to the transaction out of which the item arose." 810 ILCS 5/4—407 (West 1996). When a bank pays out a check over a valid stop payment order, the ultimate burden of proof as to loss is on the customer. *Mitchell v. Republic Bank & Trust*, 35 N.C. App. 101, 239 S.E.2d 867 (1978).

Since the Bank paid out over McIntyre's valid stop payment order, we must determine whether the Bank can become subrogated to the rights of another party to prevent unjust enrichment. McIntyre admitted that Bennett wrote a $2,000 check to Total Home and that he deposited it in his business account at the Bank. He did not dispute Bennett's testimony that he told Bennett she could cash his check to her if her roof was not completed by October 28, 1996. He agreed that the roof was never completed. Therefore, McIntyre deposited $2,000 of Bennett's money in his account for work that was never performed. Under these facts, the trial court properly determined that McIntyre's testimony that he was simply an intermediary between Archie and Bennett was incredible and it properly found that McIntyre was unjustly enriched. Thus, the Bank is entitled to repayment if it can subrogate itself to the rights of a proper party under the UCC. See 810 ILCS 5/4—407 (West 1996).

## B. HOLDER IN DUE COURSE

McIntyre argues that Bennett cannot be a holder in due course because an instrument must be negotiated to confer holder in due course status to a party.

A payee of a check may be a holder in due course. *Palmetto Leasing Co. v. Chiles*, 235 Ill. App. 3d 986, 602 N.E.2d 77 (1992). A holder of an instrument is a holder in due course if: (1) the instrument when issued or negotiated to the holder does not bear apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and (2) the holder took the instrument drawn or endorsed to him: (i) for value; (ii) in good faith; and (iii) without notice of any defense against it. *Palmetto Leasing Co. v. Chiles*, 235 Ill. App. 3d 986, 602 N.E.2d 77 (1992); see 810 ILCS 5/3—302(a)(1), (a)(2) (West 1996).

Here, Bennett met the requirements to be a holder in due course. The check had no evidence of forgery, and she took the check for value, in good faith, and without notice that a stop payment order had been issued on the check or that any other defense was valid against it. Because of Bennett's status as a holder in due course, the

Bank could be subrogated to Bennett's rights to demand payment from McIntyre under section 4—407.

■ Moreover, under 4—407(2), even if Bennett were not a holder in due course, the Bank would still be subrogated to her rights as a payee. See 810 ILCS 5/4—407(2) (West 1996). Under subsection (2), Bennett, as the payee of the instrument, even as a mere holder, obtained the right to pursue McIntyre. A payor Bank is subrogated to the rights "of the payee or any other holder *** against the drawer *** on the item or under the transaction out of which the item arose," 810 ILCS 5/4—407(2) (West 1996). The Bank was properly subrogated to Bennett's interest as the holder of McIntyre's check.

## II

■ McIntyre also argues that he was denied a fair trial when the defendants introduced his prior felony conviction into evidence. Specifically, he notes that the conviction was dismissed after he successfully completed 30 months' probation under the first offender statute of the Controlled Substances Act. 720 ILCS 570/410 (West 1992).

We find that McIntyre was not denied a fair trial when his prior conviction was admitted into evidence. First, although he objected to the admission of the conviction, McIntyre did not inform the court that he was sentenced under a unique provision allowing for the dismissal of the conviction after a successful probation period. See 720 ILCS 570/410 (West 1992). Therefore, McIntyre has waived this argument on appeal. See *Akers v. Atchison, Topeka & Santa Fe Ry. Co.*, 187 Ill. App. 3d 950, 543 N.E.2d 939 (1989) (when an objection is made in the trial court, the specific grounds must be stated, and other grounds not stated are waived on appeal). Moreover, the trial court specifically stated both at the close of trial and in its denial of McIntyre's motion to reconsider that its decision was not affected in any way by evidence of McIntyre's prior conviction. Therefore, any error in admitting the conviction into evidence was harmless.

## III

■ Finally, McIntyre argues that the trial court erred in relying on defendants' exhibit 2, the carbon copy of the proposal Archie wrote to Bennett. McIntyre alleges that because "Total Home" is written in ink on the top of the proposal it was altered. To support his contention, he points to a photocopy of the proposal in the common law record that does not contain the words "Total Home" at the top.

A review of the record shows that the photocopy of exhibit 2 cuts off the entire top portion of the proposal where "Total Home" had been written. Therefore, it is not a proper comparison to the original exhibit 2. Moreover, McIntyre did not object to exhibit 2 at the trial

level and has waived any objection to the proposal's authenticity on appeal. *Williamsburg Village Owners' Ass'n v. Lauder Associates*, 200 Ill. App. 3d 474, 558 N.E.2d 208 (1990) (the preservation of a question for review requires appropriate objection in a civil trial, and a failure to object constitutes waiver). Finally, as we have noted, even without exhibit 2 there was overwhelming evidence that McIntyre was directly involved in this transaction and not simply acting as an intermediary for Archie as he has contended. Therefore, the trial court did not err in admitting exhibit 2 into evidence.

The judgment of the circuit court of La Salle County is affirmed.

Affirmed.

HOLDRIDGE, P.J., and BRESLIN, J., concur.