April 16, 1999

 No. 3--98--0089

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 1999

BRIAN P. MCINTYRE, ) Appeal from the Circuit Court

 ) of the 13th Judicial Circuit,

Plaintiff-Appellant, ) La Salle County, Illinois

 ) 

v. ) 

 ) 

ROBERT E. HARRIS and ) 

TWIN OAKS SAVINGS BANK,         )

 )

Defendants-Appellees, )

________________________________) No. 97--SC--1137

 )

TWIN OAKS SAVINGS BANK, )

 )

Counterplaintiff- )

Appellee, )

 )

v. )

 )

BRIAN P. MCINTYRE, )

  ) Honorable

Counterdefendant-  ) James Brusatte 

Appellant.  ) Judge, Presiding

________________________________________________________________

JUSTICE LYTTON delivered the opinion of the court:

________________________________________________________________

The plaintiff, Brian P. McIntyre, filed a complaint against the defendants, Twin Oaks Savings Bank (Bank) and Robert E. Harris (Harris), the Bank's executive vice-president.  McIntyre alleg­ed that the defen­dants coerced him into signing a $2,000 person­al note made payable to the Bank after the Bank had errone­ously paid out a check over McIntyre's valid stop payment order.  The defen­dants coun­ter­claimed, demand­ing payment on the overdue note.  After a bench trial, the court found in favor of the defendants.  On appeal, McIntyre con­tends:  (1) the trial court erred in ruling that Sandra Bennett, the payee on the check, was a holder in due course; (2) McIntyre was denied a fair trial when the defendants introduced a copy of his prior felony convic­tion into evidence; and (3) one of the defendants' exhibits was an altered docu­ment.  We affirm.

In mid-October 1996 McIntyre's company, Total Home, placed a telemarketing call to Sandra Bennett.  As a result, Ray Archie visited Bennett's home and quoted her a price to repair her roof.  McIntyre testified that since his company did not repair roofs, he re­ferred the job to Archie.  Bennett, however, believed that Archie worked for Total Home.  

At trial, McIntyre identified defendant's exhibit 2, a carbon copy of a proposal written by Archie for Bennett's roof.  The price for the job was $3,850, including $2,000 for materials.  At the bottom of the proposal, Archie had signed his name and written "House Doctor" as the company performing the work.  At the top of the proposal, "Total Home" was written in ink.

Around October 19, 1996, McIntyre visited Bennett and told her that in order to complete the job, it was necessary for her to give Archie $2,000 for the materials.  Bennett wrote a check to Total Home for $2,000 that day.  In return, McIntyre wrote Bennett a check for $2,000 and postdated it to October 28, 1996.  Bennett said that McIntyre told her that she could cash his check if her roof was not repaired by Octo­ber 28, 1996.  McIntyre cashed Bennett's check and deposited it in his business account at the Bank.  Even so, McIntyre maintained that he was simply acting as an interme­diary for Archie.  

McIntyre admitted that Bennett's roof was not repaired by October 28, 1996.  Nevertheless, on November 14, 1996, he ordered the Bank to stop payment on the check to Bennett.  

Around November 27, 1996, the Bank erroneously paid out on McIntyre's check over his stop payment order.  After McIntyre learned that the Bank had with­drawn the $2,000 from his business account, he spoke with Harris and told him that the withdraw­al would cause his account to be overdrawn.  He then went to the Bank and signed an agree­ment to pay the Bank $2,000 plus interest due by July 1, 1997.  In return, the Bank agreed to leave the $2,000 in his account.  McIntyre admit­ted that he never paid on the note and at the time of trial he was cur­rently 2½ months overdue on it.

Over McIntyre's objection, the defendants submitted an offer of proof that on April 26, 1993, McIntyre pled guilty to unlawful possession of a controlled substance.  See 720 ILCS 570/402 (West 1992).  The judge ruled that it would allow the evidence of McIntyre's prior felony, but stressed that the conviction was incon­se­quen­tial because its decision was based on the testi­mo­ny given during the bench trial.  

The judge further stated that it did not believe that McIntyre had no involve­ment with the roof transaction.  He found that Bennett was a holder in due course of the $2,000 check.  There­fore, under the Uniform Commercial Code, the Bank was subrogated to the rights of Sandra Bennett and could recover the money from McIntyre.  The court then found in favor of the defendants on both McIntyre's com­plaint and the defendants' counterclaim.

After trial, the court granted McIntyre's motion to supple­

ment the record to include evidence that his conviction had been dismissed pursuant to the first offender statute of the Con­

trolled Substances Act.  720 ILCS 570/410 (West 1992).  The court denied McIntyre's motion to reconsider, again noting that it did not consid­er McIntyre's prior conviction in its decision.

I. 

A. 
UNJUST ENRICHMENT
  

McIntyre first contends that the Bank is not entitled to a $2,000 reimbursement.  In deciding this issue, we must deter­mine two questions under section 4-407 of the Uniform Commercial Code (UCC) (810 ILCS 5/4--407 (West 1996)): (1) whether the Bank proper­ly paid out over a valid stop payment order to prevent unjust enrich­ment, and (2) whether the Bank can be subrogated to the rights of a holder in due course, or of a mere holder in due course of a negotia­ble instru­ment.  McIntyre con­tends that the Bank could not be subrogated because Bennett was not a holder in due course.

Section 4--407 of the UCC pro­vides that if a payor bank has paid an item over the stop order of the drawer or maker, the bank may become subrogated to the rights of other parties in order to prevent unjust enrich­ment to the extent neces­sary to prevent loss to the bank by reason of its payment of the item.  Specifically, the payor bank may become subro­gat­ed to the rights of:  "(1) any holder in due course on the item against the drawer or maker; (2) the payee or any other holder in due course of the item against the drawer or maker either on the item or under the transaction out of which the item arose; and (3) the drawer or maker against the payee or any other holder in due course of the item with respect to the trans­action out of which the item arose."  810 ILCS 5/4--407 (West 1996).  
When a bank pays out a check over a valid stop payment order, the ulti­mate burden of proof as to loss is on the custom­er.  
Mitchell v. Republic Bank & Trust v. Weath­

ers Brothers Office Equipment Company
, 239 S.E.2d 867 (N.C. Ct. App. 1978).   

Since the Bank paid out over McIntyre's valid stop payment order, we must deter­mine whether the Bank can become subro­gated to the rights of another party to prevent unjust enrich­ment.  McIntyre admit­ted that Bennett wrote a $2,000 check to Total Home and that he deposited it in his business account at the Bank.  He did not dispute Bennett's testimony that he told Bennett she could cash his check to her if her roof was not completed by October 28, 1996.  He agreed that the roof was never com­plet­ed.  There­fore, McIntyre depos­it­ed $2,000 of Bennett's money in his account for work that was never per­formed.  Under these facts, the trial court proper­ly deter­mined that McIntyre's testimony was unjustly en­riched and not simply an intermediary between Archie and Bennett.  Thus, the Bank is enti­tled to repay­ment if it can subro­gate itself to the rights of a proper party under the UCC.  See 810 ILCS 5/4--407 (West 1996).

B. 
HOLDER IN DUE COURSE
   

McIntyre argues that Bennett cannot be a holder in due course because an instru­ment must be negotiated to confer holder in due course status to a party.

A payee of a check may be a holder in due course.  
Palmetto Leasing Company v. Chiles
, 235 Ill. App. 3d 986, 602 N.E.2d 77 (1992).  A holder in due course of an instrument is a holder in due course if:  (1) the instrument when issued or negotiat­ed to the holder in due course does not bear apparent evi­dence of forgery or alter­ation or is not otherwise so irregu­lar or incom­

plete as to call into question its authenticity; and (2) the holder in due course took the instru­ment drawn or endorsed to him: (i) for value; (ii) in good faith; and (iii) without notice of any defense against it.  
Palmet­to Leasing Company v. Chiles
, 235 Ill. App. 3d 986, 602 N.E.2d 77 (1992); see 810 ILCS 5/3--

302(a)(1),(2) (West 1996).    

Here, Bennett met the re­quire­ments to be a holder in due course.  The check had no evi­dence of forg­ery, and she took the check for value, in good faith, and without notice that a stop payment order had been issued on the check or that any other defense was valid against it.  Because of Bennett's status as a holder in due course, the Bank could be subro­gat­ed to Bennett's rights to demand payment from McIntyre under section 4--407.  

More­over, under 4-407(2), even if Bennett were not a holder in due course, the Bank would still be subrogated to her rights as a payee.  See 810 ILCS 5/4--407(2) (West 1996). Under subsec­

tion (2), Bennett, as the payee of the instrument, even as a mere holder in due course, obtained the right to pursue McIntyre.  A payor Bank is subrogated to the rights "of the pay­ee or any other holder against the draw­er on the item or under the trans­ac­tion out of which the item arose," 810 ILCS 5/4--407(2).  The Bank was proper­ly subro­gat­ed to Bennett's interest as the holder of McIntyre's check.

II.  

McIntyre also argues that he was denied a fair trial when the defendants introduced his prior felony convic­tion into evi­

dence.  Specifically, he notes that the conviction was dis­missed after he successfully completed 30 months' proba­tion under the first offender statute of the Controlled Substanc­es Act.  720 ILCS 570/410 (West 1992).  

We find that McIntyre was not denied a fair trial when his prior conviction was admitted into evidence.  First, although he objected to the admission of the conviction, McIntyre did not inform the court that he was sentenced under a unique provision allowing for the dismissal of the conviction after a successful probation period.  See 720 ILCS 570/410 (West 1992).  Therefore, McIntyre has waived this argument on appeal.  See 
Akers v. Atchison, Topeka & Santa Fe Railway Company
, 187 Ill. App. 3d 950, 543 N.E.2d 939 (1989) (when an objection is made in the trial court, the specific grounds must be stated, and other grounds not stated are waived on appeal).  More­over, the trial court specif­i­cal­ly stated both at the close of trial and in its denial of McIntyre's motion to reconsider that its deci­sion was not affect­ed in any way by evidence of McIntyre's prior convic­

tion.  Therefore, any error in admit­ting the conviction into evidence was harmless.

III. 

Finally, McIntyre argues that the trial court erred in relying on defendants' exhibit 2, the carbon copy of the proposal Archie wrote to Bennett.  McIntyre alleges that because "Total Home" is written in ink on the top of the proposal it was al­

tered.  To support his contention, he points to a photocopy of the proposal in the common law record that does not contain the words "Total Home" at the top.

A review of the record shows that the photocopy of exhibit 2 cuts off the entire top portion of the proposal where "Total Home" had been written.  Therefore, it is not a proper comparison to the original exhibit 2.  More­over, McIntyre did not object to exhibit 2 at the trial level and has waived any objec­tion to the proposal's authen­ticity on appeal.  
Williamsburg Village Owners' Association v. Lauder Associates
, 200 Ill. App. 3d 474, 558 N.E.2d 208 (1990) (the preservation of a question for review requires appropriate objection in a civil trial, and a failure to object constitutes waiver).  Final­ly, as we have noted, even without exhibit 2 there was overwhelm­ing evidence that McIntyre was directly involved in this transac­tion and not simply acting as an intermediary for Archie as he has contend­ed.  Therefore, the trial court did not err in admit­ting exhibit 2 into evi­dence.

The judgment of the circuit court of La Salle County is affirmed.

Affirmed. 

BRESLIN, J., and HOLDRIDGE, P.J., concur.